GLASS ET AL. v. THE CITY OF CEDAR RAPIDS.

1. **Cities and Towns:** ANNEXATION OF TERRITORY: CHAPTER 47, LAWS OF 1876. Upon consideration of chapter 47, Laws of 1876, as amended by chapter 158, Laws of 1884, *held* that they confer upon cities acting under special charters the power to extend their boundaries, as therein provided, by including territory not laid off into lots of two acres or less, as contemplated by § 431 of the Code.

2. **Statutes:** INTERPRETATION OF: PUBLIC POLICY. Where the language of a statute is such that its meaning cannot be determined with certainty by looking at the language alone, it is allowable to give some weight to those general considerations of public policy which, it may be presumed, the legislature had in mind at the time of its enactment.

*Appeal from Linn Circuit Court.*

MONDAY, DECEMBER 21.

ACTION for an injunction to restrain the defendant city from exercising jurisdiction over certain territory. There was a demurrer to the petition, and the demurrer was sustained. The plaintiffs elected to stand upon their petition, and judgment was rendered against them, dismissing their petition and for costs. They appeal.

*Deacon & Smith,* for appellants.

*I. N. Whittam* and *A. R. West,* for appellee.

ADAMS, J.—The city of Cedar Rapids is organized under a special charter. The question presented relates to the power

1. CITIES and towns: annexation of territory: chapter 47, laws of 1876.

of the city to enlarge its boundaries. On the twenty-ninth day of November, 1884, the question of including within the corporate limits certain territory, by an extension of the boundaries of the city, was submitted to the electors of the city and of the territory proposed to be included, and the majority of the electors voted in favor of such extension, and the mayor accordingly issued his proclamation announcing such fact. The plaintiffs are tax-payers residing upon the territory in question, and they deny the validity of the proceedings. They do not deny that the proceedings were conducted in the manner prescribed by chapter 47 of the Acts of the Sixteenth General Assembly, but they deny that that statute, even as amended by chapter 158 of the Acts of the Twentieth General Assembly, conferred the power in question. Their position is that, while the electors of the city and of the territory proposed to be included might so extend the boundaries as to include the proposed territory if it were "abutting or contiguous territory, laid out in lots or parcels containing two acres or less," there is on provision by which the boundaries of a city acting under a special charter can be so extended as to include territory, like the territory in question, which is admitted to consist of land not laid out into lots, except forty acres, which tract of forty acres is remote and distant from the platted portion of the city, and the whole of which territory is used solely for agricultural and horticultural purposes.

The question presented requires a construction of the statute referred to. Turning to the statute, we find the first section to be in these words: "That, in addition to the methods now provided by law, any city in this state may have its limits enlarged in the manner herein prescribed." The plaintiffs contend that the purpose of the statute is to provide only an *additional method* of accomplishing results which could be accomplished under an existing statute. Section 431 of the Code provides for the annexation of a certain kind of territory by a decree of the circuit court. The territory that

can be annexed by that method must be abutting and contig-. uous, and laid out in lots or parcels containing two acres or less; and the plaintiffs' contention is that only such territory can be annexed by election, because, if other territory could be annexed under chapter 47 referred to, then the statute would have the effect to provide something more than an additional method, to-wit, a substantial right which could not be exercised under the old statute at all.

It is not to be denied, we think, that, looking at the first section of chapter 47, which we have set out above, there would seem to be much force in the plaintiffs' position. But we do not think that there is necessarily any inconsistency in providing what is called an additional method for enlarging the boundaries of a city, and allowing, by such method, terri- tory to be brought in different from that which could be brought in by the method to which the new method is addi- tional.

Section 4 of the act in question certainly contemplates that territory may be annexed where the same is not laid off into lots of two acres or less, and we have to say that, taking the whole statute together, we think that it was designed to allow the annexing of territory like that in question. It may be said, to be sure, in regard to section 4, which provides for the exemption, to some extent, of land from taxation where not laid off into lots of two acres or less, that this section does not confer any power, but merely imposes a restriction, and that such restriction would be allowed full force even under the construction which the plaintiffs contend for. Unquestion- ably, land laid off into lots of two acres or less may be annexed, under chapter 47, to cities incorporated under the general incorporation law. The restriction in regard to taxation imposed by section 4 might have its force regarded as appli- cable to such cities. But in the same section there is a sig- nificant proviso. It is provided that the provisions of the act shall not apply to cities organized under a special charter. This affords ground for the inference that the legislature

thought, not only that the provision of the act, so far as the mode of annexation is concerned would apply unless otherwise provided, but that section 4, which contains the proviso, would be deemed applicable. By chapter 158 of the Acts of the Twentieth General Assembly, the proviso is stricken out by amendment.

Where the language of a statute is such that its meaning cannot be determined with certainty by looking at the language alone, it is allowable to give some weight to those general considerations of public policy which we may presume that the legislature had in mind at the time of the enactment. The plaintiffs contend that the annexation in this case, if valid, operated as a great hardship upon them; and that, if the construction is adopted which allows it to be valid, annexation will often operate as a great hardship upon the tax-payers residing upon the annexed territory. That there is some danger of this kind cannot, of course, be denied. Cities have it in their power, by annexing comparatively small portions of territory at a time, to enlarge their boundaries indefinitely; and that, too, against the wishes of all the tax-payers residing upon the annexed territory. The question as to what should be done, regarded as a legislative question, is one not free from difficulty. It is well known that there is a tendency to establish residences substantially urban, but outside of the territorial limits of a city, for the purpose of escaping a portion of the taxation which a city residence would impose; and it would be safe to affirm that the same kind of an interest would generally tend to create a disposition on the part of the tax-payers thus situated to oppose any expansion of municipal limits which would include them. But cities must be allowed to grow territorially where the growth of population demands it. Under the law as it stood prior to the Sixteenth General Assembly, territorial expansion, however desirable it might be for the city, might be rendered impossible by the non-concurrence of the electors residing upon contiguous territory.

2. STATUTES: interpretation of: public policy.

We cannot say, therefore, that the statute in question, with the construction which we put upon it, would be open to such general objections that we ought to conclude that a different operation was intended, and that our construction is wrong. Besides, it is undisputed that the statute in question provides for the indefinite expansion of cities organized under the general incorporation law, and that, too, where the expansion is secured against the wishes of all the electors residing upon the annexed territory.

Is the hardship greater where tax-payers are included, against their wishes, in a city acting under a special charter? If there is any difference, we cannot think it is such that we ought to regard it as of controlling importance. The legislature made section 431 of the Code applicable both to cities organized under the general incorporation law and those having special charters. But section 430 was made applicable to the former alone. Upon what ground the legislature made a distinction does not clearly appear. Possibly, as a special charter might be presumed to contain peculiar provisions, it was thought that the territory of a city acting under such ought not to be extended, except as the result of a judicial investigation and decision. But it is not important to speculate as to what the idea of the legislature was. It is certain that the legislature contemplated that the operation of a special charter might be extended over new territory, and that, too, contrary to the wishes of the electors of the territory; and, without question, it is within the power of the legislature to so provide. It might be otherwise if a special charter could not become operative without the express acceptance of a majority of the electors, but such express acceptance is not necessary unless expressly so provided in the charter itself. In our opinion the court below did not err in holding that the proceedings for the extension of the boundaries of the defendant city were valid.

AFFIRMED.