F. PRICE SMITH, County Treasurer, Appellant, v. SIOUX CITY STOCK YARDS COMPANY, Appellee.

No. 42759.

APRIL 2, 1935.

Wright & Baldwin, George S. Wright, Addison G. Kistle, Paul E. Roadifer and A. W. Johnson, for appellant.

Milchrist, Schmidt, Marshall & Jepson and Davis, McLaughlin & Hise, for appellee.

PARSONS, J.—F. Price Smith was the treasurer of Woodbury county, Iowa. He brought this suit in the district court of Woodbury county against the Sioux City Stock Yards Company, filing his petition therefor on the 31st day of August, 1933. The suit involved various claims over claimed omitted assessments made on corporate stocks held by the Sioux City Stock Yards Company, and machinery and fixtures held by the Sioux City Stock Yards Company. In these cases there is involved a considerable amount of money claimed to be due for back taxes, the amount being approximately $34,000, plus fifty per cent penalty, with six per cent interest on the entire amount of taxes and penalty, aggregating in all between fifty-three and fifty-four thousand dollars. These proceedings were initiated by the treasurer of Woodbury county, serving upon the Sioux City Stock Yards Company a notice of the omission of the property from taxation, and the demand for payment, together with the penalty and interest, under sections 7155 and 7156 of the Code of 1931. The petition was in twelve counts, the first eight of which were on the claimed omissions to list corporate stock in the Sioux City Terminal Railway Company, and corporate stock in the Sioux City Stock Yards Company, and omitting machinery, equipment, furniture, and fixtures owned by the Sioux City Stock Yards Company. Notice was served upon the Sioux City Stock Yards Company on the 28th day of July, 1933.

To the petition of the county treasurer filed on the 31st day of August, 1933, the Sioux City Stock Yards Company filed a motion for more specific statement, asking that it be set out in the petition whether or not an order was received by the treasurer of Woodbury county ordering the cancellation of all the assessments referred to in said petition, and if so, set out a copy thereof. The court sustained the motion, and the amendment to the petition was filed, and that amendment shows an application to the state board of assessment and review in reference to assessments or claimed delinquencies of the Sioux City Stock Yards Company involved herein. This application was filed with the board on the 28th day of August, 1933, prior to institution of suit, by the Sioux City Stock Yards Company setting forth that the proposed assessments by the treasurer were without warrant or authority of law, and if carried out as contemplated, it would result in double taxation against said company, and taking its property in violation of the due process, actual protection, and just compensation clauses of both state and federal

constitutions, and asked for the fixing of a date for hearing. That the date for hearing thereof was fixed for the 8th day of September, 1933, and due and proper notice of this hearing was ordered sent to the county auditor and to F. Price Smith, county treasurer. That the county auditor, LeMar, and Smith both appeared in person and by their attorneys at said hearing. The hearing was then adjourned to September 20, 1933, and the board thereafter entered an order, which stated:

"It is therefore ordered and adjudged by the State Board of Assessment and Review that each of the assessments complained of and herein investigated by this Board, as made by the County Treasurer of Woodbury County and the County Auditor of Woodbury County, as omitted property, be and they are hereby declared illegal, erroneous, and void, and the said County Treasurer and said County Auditor of Woodbury County, and each of them, are hereby ordered to abate said assessments, together with any interest or penalty claimed thereon, and to strike the same from the tax books of Woodbury County, and that the assessments of the property of the Sioux City Stock Yards Company as made by the duly constituted assessor of Sioux City for the year 1933, be confirmed, and said County Treasurer and said County Auditor, or their successors in office, are hereby directed and ordered to change and correct their tax books and records in conformity herewith."

It appeared further that on the 29th day of November, 1933, notice of appeal was served upon the board of assessment and review appealing from this ruling of the board to the district court.

On May 11, 1934, the stock yards company filed in the office of the clerk of the district court of Woodbury county, Iowa, a demurrer in seven counts, raising the question that the district court had no jurisdiction of the person of the defendant or the subject-matter of the action for the reason that the state board of assessment and review had ruled upon and determined this entire controversy, and had ordered the cancellation of said alleged assessments as shown by amendment to plaintiff's petition; that the power of the state board of assessment and review relative thereto was full, absolute, and complete; also raising the question, which was covered by the first count, that this had been adjudicated by the state board of assessment and review; that under and by virtue of the provisions of chapter 329-C2, being sections 6943-c11 to 6943-c36, of the 1931

Code of Iowa, the determination of all matters in controversy was vested in the state board of assessment and review and that the facts stated in plaintiff's petition and amendment thereto do not entitle the plaintiff to the relief demanded, for each and all of the reasons set forth; and, lastly, that the state board of assessment and review had the jurisdiction and right, power and authority to make said order, canceling and abating said assessment, and to direct the said plaintiff to cancel and set aside said assessments and not to proceed to collect said taxes so assessed. The district court of Woodbury county, Iowa, on the 8th day of June, 1934, sustained the said demurrer and on August 3, 1934, entered an order of dismissal reciting therein:

"Now, on this 3d day of August, 1934, the above entitled matter coming on for hearing before the Court, plaintiff appearing by his attorneys, Wright & Baldwin, Addison G. Kistle, Paul E. Roadifer and A. W. Johnson, defendant, appearing by its attorneys Milchrist, Schmidt, Marshall & Jepson, and Davis, McLaughlin & Hise, it appearing to the court that on the 18th day of June, 1934, the Court made an order sustaining the demurrer of the defendant herein.

"And now, at this time, in open court, the plaintiff elects not to plead further and to stand without pleading further.

"IT IS THEREFORE ORDERED by the Court that the petition of the plaintiff be dismissed and that defendant have judgment against the plaintiff for costs."

From these proceedings in the district court of Woodbury county, Iowa, an appeal was taken by the plaintiff to this court.

The Forty-third General Assembly of the state enacted chapter 205 which appears in the Code of 1931 as chapter 329-C2, and includes sections 6943-c11 to 6943-c36. This provided that the board of assessment and review should consist of three members appointed by the governor and confirmed by the senate, and by section 6943-c13, section 3 of the original act, the persons appointed as members of the board should be such as possess knowledge of the subject of taxation and skill in matters pertaining thereto, and further provided that not more than two members of said board shall belong to the same political party.

In section 6943-c24, section 14 of the original act, the board was given power to establish all needful rules not inconsistent with law for the orderly and methodical performance of its duties, and

to require the observance of such rules by those having business with or appearing before said board.

Section 6943-c27, or chapter 205, section 17, of the original act, as amended by chapter 206 of the Forty-fourth General Assembly, provides that in addition to the powers and duties transferred to the state board of assessment and review said board shall have and assume the following powers and duties: * * * This section has sixteen subdivisions, one being numbered 9a, the others from 1 to 16, inclusive. Among the powers given to the board in subdivision 9a is to correct errors, irregularities, or omissions in assessments of individual taxpayers by adding to the tax list any omitted property or by raising, lowering, or abating an assessment found to be erroneous or excessive; * * * In the same subdivision it is provided that any party aggrieved by the action of the state board may, within twenty days after such action has been taken, appeal from the action of the state board to the district court of the county where the property is situated, by serving on the chairman of the state board a written notice of appeal. Another provision in this subdivision is that the state board shall notify the county auditor or county treasurer of any such corrections or change, and the county auditor or county treasurer shall amend the assessment roll or tax list to conform to the order of the board.

These provisions apparently give to the board authority not only over assessment of the individual taxpayer, but authority to list any omitted property by raising, lowering, or abating an assessment found to be erroneous or excessive.

Subdivision 10 gives power to the board to carefully examine into all cases where evasion or violation of the law for assessment and taxation of property is alleged, complained of, or discovered, and to ascertain wherein existing laws are defective or are improperly or negligently administered, and cause to be instituted such proceedings as will remedy improper or negligent administration of the laws relating to the assessment or taxation of property.

Section 6943-c34, being section 27 of the original act, provides that all laws or parts of laws in conflict herewith are hereby repealed.

And section 6943-c35, or section 33 of the original act, provides that all the powers heretofore vested in, and all the duties imposed upon the executive council of the state of Iowa as a state board of review or in relation to the valuation of property or prop-

erty rights for taxation, the levy or assessment of taxes on property or property rights, the determination of tax rates for state purposes, and any and all powers pertaining to the taxation of property and property rights of whatsoever kind, are hereby transferred to the state board of assessment and review. The purpose and intent of this act has been somewhat discussed in the courts of the state before. In the case of Board of Trustees v. County Board, 215 Iowa 876, on page 879, 244 N. W. 855, 856, the court says, quoting from a previous case: "The purpose for which a state board of assessment and review is created * * * as expressed by the legislature, is that 'all assessments of property and taxes levied thereon be made relatively just and uniform in substantial compliance with law.' "

In State v. Board of Sup'rs of Webster County, 211 Iowa 1116, the court says on page 1121, 235 N. W. 303, 305, therein discussing the act:

"The act which authorizes the state board to direct county boards of equalization either to raise or lower the valuation fixed for the assessment of property contains no provision for notice. The omission of such provision is urged by counsel as a sufficient reason for holding that the direction of the state board, whatever it may be, must be made at the session appointed by law to review the acts of county boards of equalization for the current assessment year. Such construction would so limit the scope and effect of the act as to practically destroy its usefulness. It would also seem to be in direct conflict with the plain language of section 17. The functions and duties of the state board continue and are to be exercised whenever the necessity arises, to the end that equality in assessments, so far as that is possible, may be attained."

In the last case, decided February 17, 1931, the court in the opinion, at page 1120, said:

"It should be stated that we are not in this case dealing with individual assessments, and all questions involving such are reserved. All conflicts in the provisions of the Code are wiped out by the repealing clause of chapter 205."

The answer by the legislature, which was then in session, was the passage of chapter 206 of the 44th General Assembly, which added subdivision 9a, the one containing the authority to deal with the assessments of the individual taxpayers, and the one con-

taining the clause that the state board shall notify the county auditor or county treasurer of any such change, and the county auditor or county treasurer shall amend the county roll or tax list to conform to the order of the board. This was passed as an amendment to chapter 205 of the 43d General Assembly, so the act is to be construed now as if the amendment was originally a part of the first act, and this amendment, as pointed out before, gives full power to the board of assessment and review to deal with individual assessments and to deal with the assessments of omitted property, and to require the treasurer and auditor to change the assessment roll or tax list to conform to the order of the board.

This act is a remedial act. It was passed with the end in view to have central authority to pass upon all the questions as to the manner and method of getting assessments properly made and taxes properly levied on the property included in the assessments. A remedial act, of course, is always later to the situation it attempts to remedy, and necessarily in one or more ways may conflict with the provisions of the laws as they stood at the time of the passage of the act. Courts have laid down certain rules for construing such acts, and these rules laid down are sometimes called the canons of construction. The original rule laid down was by the English courts. In 25 Ruling Case Law, page 1015, section 254, we find the following:

"Where the language of a statute is ambiguous, it is proper to consider the conditions with reference to the subject matter that existed when it was adopted, the occasion and necessity for the law and the causes which induced its enactment, or, in other words, the mischief sought to be avoided and the remedy intended to be afforded. In a leading English case, which was decided in 1584 and is still frequently cited, it was resolved by the barons of the exchequer that for the sure and true interpretation of all statutes in general four things are to be discerned and considered: '(1) What was the common law before the making of the act? (2) What was the mischief and defect for which the common law did not provide? (3) What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth. And (4) the true reason of the remedy'."

We find in 59 C. J., beginning at page 952, section 659, in the following language, to wit:

"Ascertainment of Intention—Language. The intention of the legislature is to be obtained primarily from the language used in the statute. The court must impartially and without bias review the written words of the act, being aided in their interpretation by the canons of construction. Where the language of a statute is plain and unambiguous, there is no occasion for construction, even though other meanings could be found; and the court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature, but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it because of some supposed policy of the law, or because the legislature did not use proper words to express its meaning, or the court would be assuming legislative authority. Where, however, the language is of doubtful meaning or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning. If the intention of the legislature cannot be discovered, it is the duty of the court to give the statute a reasonable construction, consistent with the general principles of law. Courts should not attribute to the legislature the enactment of a statute devoid of purpose, but where the language is clear and unambiguous but at the same time incapable of reasonable meaning, the court cannot construe the statute to give it a meaning. The court cannot attribute to the legislature an intent which is not in any way expressed in the statute."

This, and the case from the barons of the exchequer, state very clearly the canon of construction of such acts.

The original case cited by the barons of the exchequer in 1584 was twenty-three years before the first English speaking colony was founded at Jamestown; thirty-six years before the Pilgrims were landed at Plymouth Rock; twenty-five years before Henrik Hudson sailed up the narrows into the harbor of New York, and on up the now Hudson river, named after him, to about where Albany now stands, under the impression he had found the long sought for northwest passage. But fortunately for us, although there were small settlements of other people along the Atlantic, these all, from the southern part of Georgia to the northern part of Maine, came under the rule of the English government as colonies, and by that the common law as it existed was imported by the colonists and

became a part of the laws so far as applicable to changed conditions.

Blackstone defined the common law as the perfection of human reason. It was the boast of that law that its principles never changed, but the application changed so as to deal with changed conditions, hence we find now this common law administered in most of the states of the Union, under the principles which existed and were established in England, mostly, long before there was any English America. We find the same common law originating in what we would now call barbarous times, applied to solving the questions that arise by reason of the railroad, the steamboat, the telegraph, the telephone, the airplane, and numerous changes that have come since that law was laid down, and is equally applicable to present conditions as it was to the times when laid down. And the rules of construction of which we speak have been carried through and adhered to since their promulgation by the barons of the exchequer. We find when we come to examine our own authorities for the rules laid down in this state for the construction of statutes, a number of cases, none of which depart from the rules laid down in the citations from Corpus Juris and from the Ruling Case Law. Going to our Iowa cases we find:

Woods v. Mains, 1 G. Greene, 275, page 292, the court says:

"In Swift's Digest the following rules are laid down for the construction of statutes: 'The common law is to be regarded, and three things are to be considered—the old law—the mischief—and the remedy: how the old law stood at the time of making the act; what the mischief was for which the common law did not provide; and what remedy the statute had provided to cure the mischief.' By the aid of these rules, we have but little difficulty in placing a construction upon this statute satisfactory to a majority of the court."

In Stephens v. D. & St. P. R. Co., 36 Iowa, 327, the court said on page 329:

"In order to correctly interpret these statutes, we must consider what was the law before the mischief against which it did not provide, the nature of the remedy proposed, and the true reason of the remedy: and this mischief we may learn from knowledge of the state of the law at the time and of the practical grievances generally complained of."

In State v. Sherman, 46 Iowa 415, the court says on page 422:

"It will be discovered that the conclusion we have reached is supported by the application of other rules for the interpretation of statutes approved by the law. These rules direct attention to signs of the legislative intention (other than the words of the statute), among which are the context of the clause in question, statutes *in pari materia,* and the reason and spirit of the law.

"These afford clear indications of the will of the legislators, because it must be presumed that statutes are intended to be harmonious in all their parts, and consistent with all other statutes upon the same subject which are not repealed, and that the language of the law makers was used in reference to the subjects of the statute in a sense that would promote the remedy or relief which is the object of the enactment."

In Cosson v. Bradshaw, 160 Iowa 296, on page 305, 141 N. W. 1062, 1065, Ann. Cas. 1915D, 157, this court said:

"In constructing or interpreting a statute, it is important to consider what the law was before its enactment, and what particular evils or wrongs were intended to be remedied by it. It must be so construed as to carry out the legislative intent."

In Elks v. Conn, 186 Iowa 48, on page 54, 172 N. W. 173, 175, the court says:

"It must, of course, be conceded that there is an ambiguity in regard to the words and statute heretofore referred to. This being so, it is the duty of the courts to give effect to the language used, and all parts of the statute, whenever it can be consistently done," and goes on to the end of the first paragraph on page 55.

In Glass v. City of Cedar Rapids, 68 Iowa 207, at page 210, 26 N. W. 75, 76, the court says:

"Where the language of a statute is such that its meaning cannot be determined with certainty by looking at the language alone, it is allowable to give some weight to those general considerations of public policy which we may presume that the legislature had in mind at the time of the enactment."

What were the evils to be remedied in the enactment of this legislation? Our previous legislation on the subject of assess-

ment and the equalization of taxation so that all would bear the burden of taxation as near as was practically possible was a patchwork, first starting with about the earliest revenue providing acts, and here and there amended until we have gathered within the Code of 1927 the results up to then of such piecemeal building up, resulting in a complicated system with no central authority, and with no practicable way of bringing about a statewide system that would insure even an approach to uniformity in the burden of taxation. So in this act the legislature wisely created an administrative tribunal clothed with judicial power, subject to appeal to the courts, to be the ultimate authority to bring about the things desired. This was the mischief to be remedied, and the means taken to remedy this mischief.

There is no question made that the proceedings before the state board of assessment and review, set out in the amendment to the petition filed by appellant, was the correct procedure, and that this matter was properly before the board to exercise what jurisdiction was given by the statutes.

What jurisdiction did the statutes give the board? Turning to subdivision 9a of section 6943-c27, we find the power given to correct errors and irregularities or omissions in assessments of individual taxpayers by adding to the list any omitted property, or by raising, lowering, or abating an assessment found to be erroneous or excessive.

Again, we find in this subdivision a provision as to what the state board shall do after it has made a ruling. That provision is:

"The state board shall notify the county auditor or county treasurer of any such correction or change and the county auditor or county treasurer shall amend the assessment roll and/or tax list to conform to the order of the board."

We have here then the board in this matter finding there should be no assessment. We find there was sent to the county auditor and to the county treasurer the order as provided in the last quoted clause of the section. Clearly, in these provisions the statute conferred upon the state board the authority to do the acts complained of in this case,—to entertain jurisdiction of the matter and to see that the orders made by it were carried out. There was then no assessment. The object of the assessment is to have a record upon which the levy of taxes may be based. Taxation can only be exercised

under the forms of the law. Worthington v. Whitman, 67 Iowa 190, 25 N. W. 124; Appanoose Co. v. Vermilion, 70 Iowa 365, 30 N. W. 616; Tallman v. Treasurer of Butler County, 12 Iowa 531; Chicago. M. & St. P. Ry. Co. v. Phillips, 111 Iowa 377, 82 N. W. 787.

The point is raised by the appellants that there is no repeal of the statutes under which the treasurer of Woodbury county claimed to be proceeding. We find in section 6943-c34 the following:

"All laws or parts of laws in conflict herewith are hereby repealed."

The effect of that was to so modify the provisions of that statute as to leave the ultimate authority to decide upon this question in the state board, subject, of course, to the right of appeal by an aggrieved party.

In the case of Hahn v. Clayton County, 218 Iowa 543, 255 N. W. 695, the court had before it the question of removal of a county engineer. The statute under which the county engineer was appointed provided that the engineer should be appointed for a period of three years. There being a change in the personnel of the board, it elected a new engineer before the time had expired. The first engineer claimed he was protected by the Soldiers Preference Law, and the court held that he was. There had been an act passed after the appointment of the first engineer, somewhat modifying the statute under which he had been appointed. This act was chapter 20 of the 43d General Assembly. In commenting on this, the opinion said, on page 552:

"No specific mention is made in either the preamble or in the body of the act of the statute concerning removal in the Soldiers Preference Law, nor is there any provision in said act that expressly repeals any laws or parts of laws in conflict therewith."

In the act under discussion here, in section 6943-c34, there was this clause:

"All laws or parts of laws in conflict herewith are hereby repealed."

So, we think this repealing clause either absolutely repealed the sections under which the treasurer claimed to have been acting, or so modified this provision that they were subject to the power granted to the state board in subdivision 9a of section 6943-c27.

That the county treasurer has no authority to take this appeal, as he is not a party aggrieved under the statutes, seems to have been decided in this court before. In re Assessment of Farmers L. & T. Co., 129 Iowa 588, 105 N. W. 1023; Yockey v. Woodbury County, 130 Iowa 412, 106 N. W. 950; Woodbury County v. Talley, 153 Iowa 28, at page 36, 129 N. W. 967.

In the brief and argument of appellee herein is quoted what is claimed to be the written argument in the brief filed by the appellant when the matter was up for hearing before the board of assessment and review. The matter therein set out is as follows:

"If this Board should undertake to say to the County Treasurer of Woodbury County, Iowa, You have no right or power to institute this action (that was the action of F. Price Smith, County Treasurer of Woodbury County, Iowa, v. Sioux City Stock Yards Company, instituted after the application of Appellee was filed with State Board) ; we say to you, you must stop; and the County Treasurer in deference to the opinion of the State Board of Assessment & Review should stop, there is no way possible to review in the court the validity of the order of the State Board of Assessment & Review. True it is that the statute says 'any person aggrieved' can appeal, but under section 1373 relating to appeals from the Board of Review, where the statute used the terms 'any person aggrieved by the action of the assessor' it meant that only the taxpayer could appeal and that no other state or county officers were permitted to appeal. See In re Assessment Farmers L. & T. Co., 129 Iowa 588, 105 N. W. 1023, and cases therein cited. So that no appeal was permitted until the section was amended by the Acts of the 32nd G. A. when it was held that a county, city or town officer could then appeal because the statute specifically so provided.

"The county treasurer who represents the State taxing power and the people for the purpose of assessing omitted property, cannot be and is not an aggrieved party in any proceeding before the State Board of Assessment & Review, so that if this board has the power to command the County Treasurer to desist and not prosecute to a conclusion an action he has started, and exercise it by telling him to desist, the State and people are powerless to correct the error, if it be one."

The appellant filed a reply brief, but in no place does he deny the correctness of the above quotation from his brief filed before

the state board. It appears to us that in the brief filed before the board of review the appellant properly stated the law governing this question. And without in any way passing upon the propriety of the appellant, in the quotation of the first instance, taking one position, and taking another position later, but as the arguments filed in this case are diametrically opposed to the statement of the law as made in his brief before the state board, the question naturally arises in our mind, Which argument is made in good faith? Which are we to follow as expressing the views of counsel for the appellant in this case? So, on the whole, we conclude that the district court of Woodbury county, Iowa, was right when it sustained the demurrer of the appellee. And we conclude that that court was right when it entered the decree or judgment it entered in this case. And for these reasons the action of the district court of Woodbury county in this case is hereby affirmed.

All Justices concur, except ANDERSON, C. J., who took no part.