WARREN J. KRUCK, appellee, v. GENE L. NEEDLES, Commissioner of Public Safety, appellant.

No. 52268.

REHEARING DENIED SEPTEMBER 19, 1966.

Lawrence F. Scalise, Attorney General, Timothy McCarthy, Solicitor General, and Michael McCauley, Assistant Attorney General, for appellant.

Mahoney, Jordan & Smith, of Boone, for appellee.

GARFIELD, C. J.—The question presented in this declaratory-judgment action is whether section 321.442, Code, 1962, prohibits use of automobile tires containing metal inserts, referred to as safety spike winter tires. The trial court held it does not. We hold it does.

The statute provides: "No tire on a vehicle moved on a highway shall have on its periphery any block, stud, flange, cleat, or spike or any other protuberances of any material other than rubber which projects beyond the tread of the traction surface of the tire, except that it shall be permissible to use farm machinery with tires having protuberances which will not injure the highway, and except also that it shall be permissible to use tire chains of reasonable proportions upon any vehicle when required for safety because of snow, ice, or other conditions tending to cause a vehicle to skid."

Plaintiff's petition in equity alleges that on December 14, 1965, he owned an automobile on which he had placed "safety spike winter tires"; defendant-commissioner caused to be served upon him a summons alleging the tires were in violation of section 321.442 and ordering their removal; the tires do not constitute the violation alleged; if the statute is construed to apply to the tires in question it is unconstitutional as an unreasonable interference with interstate commerce. Plaintiff asked a declar-

atory decree adjudging the statute was not violated and enjoining defendant and his agents from issuing further summonses.

Defendant's answer admits plaintiff's use of the "safety spike winter tires" and service of the summons upon him as alleged but denies the rest of the petition.

Following trial to the court at which plaintiff and a representative of Goodyear Tire & Rubber Company were the only witnesses, the court held section 321.442 is constitutional, does not prohibit use of plaintiff's studded tires and defendant-commissioner and his agents should be enjoined from issuing summons to plaintiff because of his use of the tires. Defendant has appealed.

I. Our review is de novo. Code section 624.4; Rules of Civil Procedure 267, 334. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Authorities need not be cited for this. Rule 344(f)7, R. C. P.

The manner in which we review the evidence here is less important than in many appeals since there is no real or substantial conflict in it upon any vital question.

II. Plaintiff is a state senator who installed on the rear wheels of his passenger car Goodyear snow tires with about 100 so-called safety spikes in each tire. Similar tires for front wheels sometimes have only 80 to 90 spikes per tire. The tires are usually made with holes in which the metal spikes are inserted pneumatically. The spikes are made by another manufacturer— located in plaintiff's senatorial district. Purpose of the spikes is to decrease skidding and improve traction on snow-packed and icy streets and highways.

The spikes protrude from the tread of the tire about $\frac{1}{16}$ inch and, according to plaintiff's witness Miller, should maintain this protrusion throughout its useful life under normal driving conditions. When the spikes come in contact with the paved surface 30 to 40 percent of the protrusion retracts into the tire— the remaining 60 to 70 percent of what protrudes from the tread continues to do so. About 98 percent of the portion of the tire that comes in contact with the road surface is rubber, natural and synthetic, and the remaining two percent of such portion consists of the spikes.

Mr. Miller testified the spiked tires require only half the stopping distance of regular tires and traction is improved 155 percent on ice; the spikes "scratch into the ice."

This witness also said the studs will come out as they get older before the end of the life of the tread of the tire and that under extreme conditions the studs may be ejected in only several hundred miles of driving. After the studs are placed in a tire the owner does not purposely remove them. A studded (or spiked) tire costs $8 to $10 more than the same tire without studs.

There is substantial evidence that use of studded tires causes significant wear and a certain amount of damage to highway surfaces, particularly at areas of frequent use of brakes. A detailed report of extensive tests by a state research bureau in Maryland considered it undesirable to give unlimited authority to use these tires until general observations have been made over a period of time.

A comparable report from our neighboring state of Illinois (introduced in evidence by plaintiff) said the wide use of these tires can be expected to cause abrasion on pavement surfaces, measurements indicated a concrete surface was abraded to a depth of almost $\frac{1}{16}$ inch in 25 rapid starts followed by 25 emergency stops *and that on dry pavements vehicles using studded tires require greater stopping distances than vehicles equipped with regular tires.*

A similar report from Oregon, also offered by plaintiff, concluded that use of studded tires roughened the pavement surface fairly rapidly and some abraded areas could have developed into chuckholes if the tests were continued.

Results of some other tests differ from those above referred to. Tests in Minnesota showed little effect on concrete paving from normal starts and stops of vehicles using studded tires. What were referred to as panic stops left marks and scratches on the surface of concrete and caused significant damage to bituminous pavement. Similar damage to bituminous pavement was caused by rapid starts on studded tires. This report also showed evidence of loss of studs from tires subjected to abnormal abuse and wear but the studs were retained after 5000 miles of normal travel.

A report from New York following less extensive tests found studded tires did not cause significant pavement damage although the surface was scratched.

Much is claimed for a report from Finland, where studded tires have been used somewhat longer than here, which states the studs had not damaged paved roads there.

In general, the reports of tests received in evidence showed substantial decrease in required stopping distance and improvement in traction from use of studded tires on packed snow and ice but considerably less than testified to supra by Mr. Miller.

III. The trial court found as facts that when a studded tire is used within normal limits, not skidding or spinning, the studs will not protrude beyond the rubber surface but recede into the tire and are not stationary; the intent of the legislature in enacting section 321.442 was to prohibit use of a tire with a fixed, rigid protrusion; use of studded tires will wear the highway surface faster than others, but their safety features are more beneficial than wear on the highways is detrimental.

As conclusions of law the court held that where language of a statute is of doubtful meaning or adherence to its strict letter would lead to injustice or absurdity it is the court's duty to ascertain the statute's true meaning; considering conditions existing when the law was adopted and the necessity therefor, effect should be given its spirit rather than its letter; the statute is constitutional but if the studded tire is prohibited thereby it would be unconstitutional under Bibb v. Navajo Freight Lines, Inc., 359 U. S. 520, 79 S. Ct. 962, 3 L. Ed.2d 1003.

We must conclude the finding that the studs do not protrude beyond the rubber tread but recede into the tire when normally used lacks substantial support in the evidence and is contrary thereto. As before indicated, it appears the spikes protrude from the tread about $\frac{1}{16}$ inch, only 30 to 40 percent of the protrusion recedes into the tire when the spikes come in contact with the paved surface and the remaining 60 to 70 percent stays protruded.

It is obvious plaintiff is in a difficult position in contending these spikes do not project "beyond the tread of the traction surface of the tire" while proclaiming the benefits from their use in stopping and traction on snow-covered and icy surfaces.

It is implicit in the trial court's conclusions of law that he regarded the language of section 321.442 as ambiguous and of doubtful meaning, thus justifying resort to what were thought to be proper rules of construction in order to determine legislative intent. The three Iowa precedents the court relied on and plaintiff cites involve statutory language found to be ambiguous and of doubtful meaning: Case v. Olson, 234 Iowa 869, 14 N.W.2d 717; Smith v. Sioux City Stock Yards Co., 219 Iowa 1142, 260 N.W. 531; Glass v. City of Cedar Rapids, 68 Iowa 207, 26 N.W. 75.

Nothing in the findings, conclusions or decree indicates what injustice or absurdity would result from adherence to what the court refers to as the strict letter of the statute.

IV. We cannot agree the language of section 321.442 is here ambiguous or of doubtful meaning. The language applicable to the present controversy is, "No tire * * * shall have on its periphery any * * * protuberances * * * other than rubber which projects beyond the tread of the traction surface of the tire, except" for permissible use on farm machinery of tires having protuberances which will not injure the highway and use of tire chains when required for safety. We think too the evidence clearly shows a violation under this language.

The statute seems to be as clear as words can make it. It should be held to mean what it says, not something it does not say—for example, that the prohibited protrusions must be fixed and rigid or, as suggested in argument, that the vehicle must ride entirely on the studs so none of the rubber tread comes in contact with the road. If the statute is to be changed to say what plaintiff would have it say the change should be made by the legislature. It is not our function to do so under the guise of construction. Hindman v. Reaser, 246 Iowa 1375, 1379, 1380, 72 N.W.2d 559, 562, and citations; Mallory v. Jurgena, 250 Iowa 16, 21, 22, 92 N.W.2d 387, 390, and citations; Thompson Wholesale Co. v. Frink, 257 Iowa 193, 197, 131 N.W.2d 779, 781.

When the language of a statute is so clear and free from ambiguity and obscurity that its meaning is evident from a mere reading there is no need for construction or search for its meaning beyond the language used. Jones v. Thompson, 240 Iowa

1024, 1036, 38 N.W.2d 672, 678, and many citations. See also Michel v. State Board of Social Welfare, 245 Iowa 961, 964, 65 N.W.2d 89, 90; Lorentzen v. Deere Mfg. Co., 245 Iowa 1317, 1322, 66 N.W.2d 499, 502; State ex rel. Warrington v. Community School District, 247 Iowa 1167, 1172, 78 N.W.2d 86, 89; Hindman and Mallory opinions, supra.

The intent of the legislature in enacting this statute which is controlling here is to be gathered from the statute itself. It is our duty to give it the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used. " 'We do not inquire what the legislature meant. We ask only what the statute means'." In re Guardianship of Wiley, 239 Iowa 1225, 1231, 1232, 34 N.W.2d 593, 596; Lever Brothers Co. v. Erbe, 249 Iowa 454, 469, 87 N.W.2d 469, 479, and citations; Hill v. Electronics Corp. of America, 253 Iowa 581, 587, 113 N.W.2d 313, 317, and citations.

Even in construing statutes courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said. This proposition is so well established that authorities need not be cited for it. Rule 344(f)13, R. C. P.

We have frequently pointed out it is not the province of courts to pass upon the policy, wisdom or advisability of a statute. Rath v. Rath Packing Co., 257 Iowa 1277, 1285, 136 N.W.2d 410, 414, and citations. They are questions for the legislature.

It is true tires of this particular type were not produced in 1937 when this statute was enacted and the legislature (section 466, chapter 134, Laws Forty-seventh General Assembly) may not have had in mind prohibition of their use. But this is insufficient basis for not giving effect to the language used. It is well settled that statutes in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage. Thus an automobile may come within the purview of an Act relating to vehicles generally although it was passed before automobiles were invented. Bruce Transfer Co. v. Johnston, 227 Iowa 50, 52, 53, 287 N.W. 278,

and many citations; Lever Brothers Co. v. Erbe, supra, 249 Iowa 454, 466, 467, 87 N.W.2d 469, 477; Dingman v. City of Council Bluffs, 249 Iowa 1121, 1130, 90 N.W.2d 742, 748; Watson v. Brady, 205 Ind. 1, 185 N.E. 516, 517, 518; Northern Pacific Ry. Co. v. Warner, 77 N. D. 721, 45 N.W.2d 196, 201; 50 Am. Jur., Statutes, section 237; 82 C. J. S., Statutes, section 319.

Plaintiff suggests in argument it would violate section 321.442, as literally interpreted, for a motorist to have a tire in which a nail, rock or other foreign substance was unintentionally embedded and this would be absurd. We can agree such a contention would be absurd. It is quite unlikely any official charged with enforcing this law would make the contention and more unlikely it would be upheld. But even if this were possible it would not justify our holding the language of the statute ambiguous. Avoidance of unreasonable or absurd consequences is one of several rules of construction courts apply only in case of ambiguity. 50 Am. Jur., Statutes, section 378; 82 C. J. S., Statutes, section 326; Lee v. Hoffman, 182 Iowa 1216, 1218, 166 N.W. 565, L. R. A. 1918C 933. See also Iowa Public Service Co. v. Rhode, 230 Iowa 751, 753, 754, 298 N.W. 794, 796.

V. As previously stated, plaintiff's petition alleges and the trial court indicated that if section 321.442 is construed to apply to plaintiff's tires it is unconstitutional as an unreasonable interference with interstate commerce.

"It is a fundamental rule of statutory construction that where a statute is fairly open to two constructions, one of which will render it constitutional and the other unconstitutional or of doubtful constitutionality, the construction by which it may be upheld will be adopted" (citations). Kruidenier v. McCulloch, 258 Iowa 1121, 1133, 142 N.W.2d 355, 362.

This rule by its terms has no application unless the statute is fairly open to two constructions. Eysink v. Board of Supervisors, 229 Iowa 1240, 1246, 296 N.W. 376, 379; Town of Mechanicsville v. State Appeal Board, 253 Iowa 517, 527, 111 N.W.2d 317, 323. This is not such a statute.

Further, in order to save a statute from unconstitutionality or free it from grave doubts thereof, courts will not

amend it. New York Life Ins. Co. v. Burbank, 209 Iowa 199, 208, 216 N.W. 742, 746, and citation; Eysink and Mechanicsville opinions, supra.

As in the Mechanicsville case, plaintiff does not directly attack section 321.442 as unconstitutional and we are not required to render an opinion on that point. It is clear, however, there is no adequate showing by plaintiff that the statute is unconstitutional as an unreasonable interference with interstate commerce—the only ground of unconstitutionality now suggested.

█ It is firmly established that one may not urge the unconstitutionality of a statute unless he is harmfully affected by the feature of the statute he alleges conflicts with the constitution. Stated otherwise, the litigant's own rights must be infringed by the alleged unconstitutionality. Iowa Hotel Assn. v. State Board of Regents, 253 Iowa 870, 880, 881, 114 N.W.2d 539, 545; Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1334, 105 N.W.2d 650, 652; Browneller v. Natural Gas Pipeline Co., 233 Iowa 686, 692, 8 N.W.2d 474, 477, and citations. See also Lewis Consolidated School Dist. v. Johnston, 256 Iowa 236, 242, 127 N.W.2d 118, 122.

█ There is no evidence or claim that plaintiff is engaged in interstate commerce and he is not entitled to attack the constitutionality of the statute on the ground it impairs the rights of those who are so engaged.

Plaintiff's brief "bases his conclusion (on the question of constitutionality) primarily upon Bibb v. Navajo Freight Lines, Inc., supra," (359 U. S. 520, 79 S. Ct. 962, 3 L. Ed.2d 1003). We think the opinion does not support the contention and much of its language is favorable to defendant. It holds invalid as an unconstitutional burden on interstate commerce an Illinois statute requiring the rear wheels of trucks and trailers to be equipped with a special type of contour mudguards out of line with the requirements of almost all other states and which would actually violate the law of one state. The truck lines made a "rather massive showing of burden on interstate commerce" which the Illinois officials made no attempt to rebut (page 528 of 359 U. S., page 1009 of 3 L. Ed.2d). The opinion recognizes

the case is one of few reaching such a result (page 529 of 359 U. S., page 1010 of 3 L. Ed.2d).

Section 321.442 does not discriminate against interstate commerce. It applies to all motorists on our highways. The legislation may be upheld as reasonably designed to conserve the highway system of the state.

Statutes similar to 321.442 have been enacted in many states, among them Illinois, Indiana and Michigan. No reported decision of any court has been found that supports plaintiff's position as to what the statute means, or on the question of constitutionality. Copy of a letter from a former attorney general of Pennsylvania was received in evidence which supports the contention that tires like plaintiff's are not prohibited by a similar statute containing safeguards our statute does not contain. The letter assumes the statute is ambiguous and of doubtful meaning and so fairly open to rules of construction, not— as the Iowa attorney general rules—clear and free from doubt.

It appears to be true also that in a number of states where such a law has been passed it has not been enforced as against users of tires like plaintiff's

Upon full consideration of all questions presented we hold the decree should be reversed and the cause remanded for decree dismissing plaintiff's petition.—Reversed and remanded.

All Justices concur.