Wayne Bernard JANSON, Appellee,

v.

Jack M. FULTON, Commissioner of the Iowa Department of Public Safety, Appellant.

No. 53145.

Supreme Court of Iowa.

Nov. 12, 1968.

administrative adjudication is de novo with Janson having the burden of proof. Buda v. Fulton, Iowa, 157 N.W.2d 336, 338–339. The parties agreed the appeal to the district court should be heard and decided on the certified transcript of testimony taken before the commissioner's agent and all other proceedings on which the commissioner had made his determination. Of course, this would not shift the burden of proof.

I. While driving his motor vehicle February 10, 1968, in Wright County, Janson had been stopped at 11 p. m. by patrolman LeMoine. There were ample circumstances to give the patrolman reasonable grounds to believe Janson had been operating his motor vehicle while in an intoxicated condition. Section 321B.3. The patrolman placed Janson under arrest for operating a motor vehicle while in an intoxicated condition. Asked if he would consent to a blood test, Janson refused and was taken to the Clarion police station. There Janson again refused to submit to a blood test and when the patrolman asked him orally and in writing to submit to a urine test he consented on being presented with written request, identified as state's exhibit 1, Request for Chemical Test. Although Janson refused to sign the exhibit in that portion referring to the blood test, at 11:10 p. m. he did sign it in the space provided for consent to a urine test.

Janson was then given an empty bottle and conducted to a back room at the city hall where the officer, watching through an open door, saw him urinate. Janson turned to the patrolman, handed him an empty bottle and "said he couldn't go", although there was evidence from the appearance of his hands and shoes he could and did urinate.

The patrolman then advised Janson of the results of his refusal to furnish a specimen, crossed off the box of the written request indicating "consent" and marked the one indicating "refused".

It is undisputed there was no licensed physician, medical technologist or register-

Richard C. Turner, Atty. Gen., and Joseph W. Zeller, Asst. Atty. Gen., for appellant.

B. V. Willie, Eagle Grove, for appellee.

MASON, Justice.

This is an appeal by the commissioner of the Iowa Department of Public Safety from a district court judgment vacating the commissioner's order revoking Wayne Bernard Janson's driver's license under the authority of section 321B.7, Code, 1966. The commissioner's revocation, based upon a sworn report of highway patrolman LeMoine, had been sustained at a hearing requested by Janson under the provisions of Code section 321B.8.

Janson then appealed to the district court under the provisions of section 321B.9. The district court review of this

ed nurse present when Janson was asked to furnish the urine specimen.

II. Code section 321B.4 of our Implied Consent Law provides in part:

"Only a licensed physician, or a medical technologist or registered nurse designated by a licensed physician as his representative, acting at the written request of a peace officer may withdraw such body substances for the purpose of determining the alcoholic content of the person's blood. * * *"

In support of the trial court's ruling Janson contends the patrolman failed to comply with this provision by failing to procure the services of a licensed physician, medical technologist or registered nurse and didn't prepare a written request to be presented to a person authorized by this section to withdraw body substances but proceeded to administer the test himself.

Janson further contends that on cross-examination the patrolman could not state the bottle resembling a pint milk bottle offered by him as a container was uncontaminated or even that it had not been previously used for an alcoholic beverage. Janson now argues he fully cooperated up to the point where directed by a person not authorized by statute to administer the test to urinate in a bottle that appeared contaminated; that after he had signed the consent for a urine test it became incumbent upon the officer to comply with section 321B.4 by presenting a written request to a licensed physician, medical technologist or registered nurse to administer the test.

Janson maintains his refusal was to submit to an improper test and a request for chemical testing in accordance with the statute was never made.

He had made no complaint of the condition of the bottle or the absence of a trained person while the attempt to procure the specimen was in progress.

The court in rendering its finding, conclusions and judgment stated as a conclusion of law, "The only point plaintiff raises is that no physician, medical technologist, or registered nurse was present during the actual urinating process."

On this appeal from the administrative hearing we are not concerned with the admissibility in court of results of the chemical analysis of this specimen for the purpose of determining the alcoholic content thereof. This is not a criminal prosecution for operating a motor vehicle while intoxicated nor a civil case such as Lessenhop v. Norton, Iowa, 153 N.W.2d 107, but an administrative proceeding under our Implied Consent Law, chapter 321B. Severson v. Sueppel, 260 Iowa ——, ——, 152 N.W. 2d 281, 285.

Nor is the question of a proper foundation for admissibility of opinion testimony in a criminal or civil case based upon analysis of the specimen involved. In Lessenhop v. Norton, supra, Iowa, 153 N.W.2d at 112, we said chapter 321B relates to authority to take blood, breath, saliva or urine specimens for chemical tests when a person is suspected of driving while intoxicated, and provides no rules for admission of these tests into evidence in such cases.

For procedure in laying a proper foundation for results of a *blood* test analysis in a civil or criminal case see Lessenhop v. Norton, supra, Iowa, 153 N.W.2d at 111; and State v. Charlson, Iowa, 154 N.W.2d 829, 835. See also Jacobsen v. International Transport, Inc. (8 Cir.), 391 F.2d 49, 51–52, where these opinions are quoted with approval.

█ Of course, condition of the container which might affect reliability of the chemical analysis of its contents would afford a ground for proper objection to the admissibility of opinion testimony in a civil or criminal case based upon the analysis. As stated, in proceedings under this chapter, alcoholic content of the individual's urine is not material. The fact that acquittal of the criminal charge of operating a motor

vehicle while intoxicated might result from the prosecution's failure to lay a proper foundation for admissibility of testimony regarding the alcoholic content of the specimen would not preclude the commissioner from revoking the individual's driver's license because of refusal to submit to chemical testing. Severson v. Sueppel, supra, 260 Iowa at ——; 152 N.W.2d at 285.

■ Janson's argument that his refusal to submit to chemical testing was due to the container offered him lacks merit.

III. Commissioner asserts the court erred in failing to find (1) plaintiff refused both a blood test and a urine test; (2) refusal of a chemical test by words or acts made it unnecessary to have present one of the trained persons enumerated in Code section 321B.4; and (3) attendance of such a trained person is not required to receive a urine specimen.

The first two contentions were rejected by the trial court in reaching his conclusion that the legislature intended to include urine in the expression "body substances" and required that a trained person be present when such specimen is obtained.

Section 321B.3 provides:

"Implied consent to test. Any person who operates a motor vehicle in this state upon a public highway, under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while in an intoxicated condition, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state

while in an intoxicated condition, and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while in an intoxicated condition. If such person requests that a specimen of his blood not be withdrawn, then a specimen of his breath, saliva, or urine shall be withdrawn at the written request of such peace officer; provided, however, that if such person refuses to submit to any chemical testing, no test shall be given, and the provisions of section 321B.7 shall apply. * * *"

Section 321B.7 provides that if a motorist under arrest refuses to submit to the chemical testing, no test shall be given but the commissioner of public safety shall revoke his operator's license.

Both commissioner's third assignment of error and plaintiff's remaining contention present the question whether the legislature intended that presence of a physician, medical technologist or registered nurse be required when a specimen of urine is obtained by the natural urinating process. We therefore consider this assignment before his first two asserted contentions.

In Severson v. Sueppel, supra, 260 Iowa at ——, 152 N.W.2d at 284, we said:

"In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citations] It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." See also State v. Charlson, supra, Iowa, 154 N.W.2d at 831–832; and State v. Holt, Iowa, 156 N.W.2d 884, 890.

The trial court's conclusion that this statute requires presence of one of the designated trained persons seems to be based upon use of the plural expressions "body substances" in section 321B.4, supra,

and "such body substances" in 321B.3, supra, following enumeration of blood, breath, saliva or urine in this section; the required presence is not limited to obtaining just one body substance such as blood.

■ This reasoning would also require presence of one of the trained persons when a specimen of saliva was taken or the individual's breath was analyzed by a Breathalyzer, Drunkometer, Intoxometer or Alcometer or other similar devices. We do not believe such intent should be attributed to the legislature.

The obvious purpose of the provision requiring a trained person to withdraw blood from the individual was to protect his health and guard against any claim of resultant infection or pain. The method for withdrawing blood differs from that used in obtaining samples of breath, saliva or urine. Blood is obtained internally, the other externally. The common method employed to "withdraw" urine is to have one urinate into a specimen bottle. No one could claim it would be necessary that a trained person be present in order to protect the individual's health during the urinating process.

The argument that the legislature intended one of the trained persons' presence at the taking of the specimen of urine in order that the individual might be protected from use of a contaminated container is not persuasive. If this argument were followed to a logical end we would have to say the legislature intended a physician to be present when a breath test was being administered. We seriously doubt that the average physician would have any knowledge whether the drunkometer was being fairly employed. Surely the legislature did not intend that a physician be required to stand idly by while one properly trained in the mechanical operation of the device administered the test. Yet, the word "breath" is used in the same clause with the word "urine" in both sections 321B.3 and 321B.4

■ Further answer to this argument is found in "a well established presumption that, in the absence of evidence to the contrary, those responsible for certain services to the public will carry out their duties in a proper, careful, and prudent manner." Judah v. State, Del., 234 A.2d 910, 911. There a number of incidents are set forth where courts of various jurisdictions have applied this presumption.

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute." In re Estate of Klug, 251 Iowa 1128, 1133, 104 N.W.2d 600, 603, quoting from 82 C.J.S. Statutes § 321. See also Grant v. Norris, 249 Iowa 236, 245, 85 N.W.2d 261, 266; Selken v. Northland Ins. Co., 249 Iowa 1046, 1053, 90 N.W.2d 29, 33, 388; Spencer Pub. Co. v. City of Spencer, 250 Iowa 47, 51, 92 N.W.2d 633, 635; and State ex rel. Bd. of Phar. Exmrs. of State v. McEwen, 250 Iowa 721, 725, 96 N.W.2d 189, 191–192. The legislative intent in enacting this chapter is expressed in section 321B.1:

"Declaration of policy. The general assembly hereby determines and declares that the provisions * * * of this chapter are necessary in order to control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition."

■ The construction of any statute must be reasonable and must be sensibly and fairly made with a view of carrying out the obvious intention of the legislature enacting it.

■ It is a familiar, fundamental rule of statutory construction that, if fairly possible, a construction resulting in unreasonableness as well as absurd consequences will be avoided. Worthington v. McDonald, 246 Iowa 466, 470, 68 N.W.2d 89, 92, 47 A.L.R.2d 135; State v. Perry, 246 Iowa 861, 873, 69 N.W.2d 412, 419; State ex

rel. Pieper v. Patterson, 246 Iowa 1129, 1136, 70 N.W.2d 838, 842; France v. Benter, 256 Iowa 534, 541, 128 N.W.2d 268, 272; Kruck v. Needles, 259 Iowa 470, 477, 144 N.W.2d 296, 301; and Brandon v. Roy, 259 Iowa 1271, 1275, 147 N.W.2d 810, 813, and citations in these opinions. See also 82 C.J.S. Statutes § 326.

■ To put the matter differently, a statute should be given a sensible, practical, workable and logical construction. Hardwick v. Bublitz, 253 Iowa 49, 53, 111 N.W.2d 309, 311; 82 C.J.S. Statutes § 323.

We have also said " * * * that the manifest intent of the legislature will prevail over the literal import of the words used; that a thing which is within the intention of the lawmakers is as much within the statute as if it were within the letter; and a thing within the letter of the statute is not within statute unless it is within the intention of the legislature. [Citing authorities]." Sinclair Refining Co. v. Burch, 235 Iowa 594, 596, 16 N.W.2d 359, 361.

■ The intent to enact an unworkable statute is not to be imputed to the legislature unless the statutory language expressly requires it. Seletsky v. Roy, 23 Conn.Sup. 139, 177 A.2d 805, 808.

"A statute is a solemn enactment of the state acting through its legislature and it must be assumed that this process achieves an effective and operative result. It cannot be presumed that the legislature would do a futile thing. 'The court is warranted in assuming that the legislative intent was to attain a rational and sensible result, not an absurd or ridiculous consequence.'" 2 Sutherland Statutory Construction, Third Ed., (Horack), section 4510, quoting from Seletsky v. Roy, supra.

To construe the statute as requiring such trained person's presence except to withdraw blood or other body substances by artificial means would defeat the expressed legislative intent to "aid the enforcement

of laws prohibiting operation of a motor vehicle while in an intoxicated condition", render the statute impracticable and unworkable, resulting in unreasonable, illogical consequences.

■ In Kruck v. Needles, supra, 259 Iowa at 475–478, 144 N.W.2d at 300–301, we said avoidance of unreasonable consequences is permissible only where the statute is ambiguous or of doubtful meaning. This merely means that statutory construction is properly invoked when the legislative acts contain such ambiguities or obscurities that reasonable minds may disagree or be uncertain as to their meaning. Palmer v. State Board of Assessment, 226 Iowa 92, 95, 283 N.W. 415, 416; Dingman v. City of Council Bluffs, 249 Iowa 1121, 1126, 90 N.W.2d 742, 746; and United States v. Tyler (ND Iowa CD), 220 F. Supp. 386, 399, and citations in these cases.

It is evident that a literal construction of section 321B.4 does not correctly reflect the legislative intent as indicated by the general purpose of the statute and when read with section 321B.3 contains uncertain and doubtful meanings which reasonably require clarification or explanation.

We think the legislative requirement that one of the designated trained persons be the only person who may withdraw such body substance was intended to be limited to withdrawal of blood or other body substances by artificial means. This limitation being within legislative intention is as much within the statute as if it were expressed in the letter by providing such limitation "shall not apply to the taking of a urine, saliva or breath specimen". See Sinclair Refining Co. v. Burch, supra.

■ We now hold that under the provisions of chapter 321B a urine specimen withdrawn by the natural urinating process may be obtained by a peace officer; that either a licensed physician, medical technologist or registered nurse is required to withdraw only blood and other body substances by artificial means.

IV. What we have said in Division III, supra, answers commissioner's contention urged under his second assignment that refusal of a chemical test by words or acts made it unnecessary to have present one of the trained persons enumerated in Code section 321B.4. In view of our holding in that division we deem it unnecessary to consider his first assignment. The case is—

Reversed.

All Justices concur.