Walter Brannan et al.

*v.*

American Telephone and Telegraph Company and
Southern Bell Telephone and Telegraph Company.

362 S.W.2d 236.

(*Knoxville,* September Term, 1961.)

Opinion filed September 7, 1962.

Petition for Rehearing Denied December 7, 1962.

Frank M. Berry, Greeneville, Wilbur W. Piper, Knoxville, for appellants.

HARRY L. COOPER, Cincinnati, Ohio, THEODORE G. PAPPAS, Nashville, H. R. SILVERS, MILLIGAN, SILVERS & COLEMAN, Greeneville, for appellees.

MR. JUSTICE WHITE delivered the opinion of the Court.

The Chancellor sustained the demurrer to the original bill and dismissed the same at the cost of the complainants. An appeal has been perfected and errors assigned to the action of the Court.

The original bill avers that the complainants are tenants in common of a tract of about 400 acres of land located on Bald Mountain in the 22nd Civil District of Greene County, Tennessee, and bounded on the south by the Tennessee-North Carolina State line.

The record discloses that in 1953 the defendant, American Telephone and Telegraph Company, by a proceeding in the Circuit Court of Greene County, Tennessee, sought to condemn a small tract of land within the boundary of the above described lands. The complainants herein were made parties defendant in that action.

The petition in that condemnation case averred that the American Telephone and Telegraph Company was a public utility corporation organized under the laws of the State of New York and engaged in the construction, maintenance and operation of communication systems for transmission of intelligence by means of telephone and telegraph and other methods in Tennessee and elsewhere. It contended that American Telephone and Telegraph Company was authorized under the laws of Tennessee to acquire land for its communication facilities by contract, agreement, or condemnation, and that it sought to exercise that authority by condemning a tract of land of the dimension of 250 feet by 150 feet, cornered on a point along the Tennessee-North Carolina State line.

Said petition, as amended by leave of the Court, further averred:

"That petitioner proposes as a necessary addition to its present facilities to construct a radio relay system for transmission of intelligence between the city of Greenville in the State of South Carolina and the city of Johnson City in the State of Tennessee. That the construction of a radio relay system requires placing at intervals of towers and buildings for housing of equipment to operate the said system."

And:

"That the tract sought to be taken would be taken in fee for the use and purposes set out in its petition and any use as provided by the laws of eminent domain, that at this time it now proposes to construct a tower approximately 15 feet square and 125 feet in height and proposes to construct a building for housing equipment approximately 40 feet long, 15 feet wide and 16 feet high, but that it would use said plot of land for the purposes and uses as set out in its petition and any use as provided by the laws of eminent domain."

The record shows that final judgment was entered in the condemnation case on October 7, 1953, sustaining the amended petition therein. Compensation of $1000.00 for the land actually taken and $3000.00 for incidental damages to the remainder of the tract of land was awarded the condemnees, and petitioner was granted ingress, egress and regress to the condemned plot. Said final judgment provided that the condemned plot of land "be divested out of them, (the defendants therein) * * * and be vested in the petitioner, American Telephone and Telegraph Company for its use and purpose as set out in its petition and only to the extent authorized by law in Eminent Domain proceedings".

In the instant case, complainants allege that instead of erecting the tower to a height of 125 feet, the defendants erected it to a height of 139 feet, and used it to relay transmissions between Greeneville and Johnson City. They allege that the defendant has no right to make any other use of the land, but has now erected another tower on said plot, to a height of 196 feet, and placed equip-

ment thereon for relaying transmissions to and from Johnson City and also Morristown, Tennessee. Thus they charge that defendants are about to preempt the air over their property at a new height and different angle in the direction of Johnson City and preempt it for the first time in the direction of Morristown. This they allege is an unlawful invasion of their rights to the air over parts of their land not taken by condemnation.

Complainants further allege that the remaining tract of land owned by them has unique and valuable properties because of its location and height above sea level, and that various levels of such property are capable of being used for television relay towers. They contend that if defendant is permitted to use its new tower it will be impossible to use other areas of the tract for television relay towers and thereby valuable property rights will be lost by them.

In other words, the complainants allege that the defendants have no right to build and use a higher tower or to relay transmissions in another direction under the 1953 condemnation judgment discussed above. They sought permanent injunction, or damages.

The defendants filed a motion to strike the proceedings in the cause for reasons which are unnecessary to be related here. An order was entered by the Court overruling said motion and thereafter the defendants filed a demurrer to the bill, giving as their first reason that the State Court has no jurisdiction to regulate or prohibit the transmission of radio impulses through the air, because such regulation is committed exclusively to the Congress of the United States by the Constitution of

the United States and to the Federal Communications Commission by Title 47 U.S.C. sec. 151 et seq.

Next the demurrer states that the transmission of radio waves through the airspace lying above the land owned by the complainants does not constitute an actionable injury to them as a matter of law.

Third, that the complainants, if their bill be taken as true, have an adequate remedy for damages at law and, therefore, the Chancery Court has no jurisdiction.

The defendants further contended in their demurrer that American Telephone and Telegraph Company acquired an unlimited right to use the condemned plot of ground for all its proper corporate purposes, and finally that the bill shows on its face that the defendants have not taken or exploited or trespassed on any property owned by the complainants.

In his decree, the Chancellor sustained each and every ground of the defendant's demurrer. Accordingly, the complainants make five assignments of error in their brief. Many questions are raised by these assignments, but it is unnecessary to consider all of them. Those which are determinative are:

1. Was the 1953 condemnation judgment valid?

2. If it was valid, what limitations were placed on the defendant's use of the land?

3. Has the defendant in any way taken or exploited or trespassed on any property owned by the complainants?

Complainants strongly urge upon us that the 1953 condemnation judgment, under which their land was

taken and they were paid damages therefor, was void for lack of jurisdiction of the subject matter. This contention is based on their reasoning that the 1953 judgment was rendered under Section 65-2101 et seq. T.C.A. Section 65-2105 T.C.A. provides:

"Right-of-way for lines.—Any person or corporation organized for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence the equivalent thereof, which may be invented or discovered, may construct, operate, and maintain such telegraph, telephone, or other lines necessary for the speedy transmission of intelligence, along and over the public highways and streets of cities and towns, or across and under the waters, and over any lands or public works belonging to this state, and on and over the lands of private individuals, and upon, along, and parallel to any of the railroads, and on and over the bridges, trestles, or structures of said railroads."

This section, they argue, permits condemnation only for telephone or telegraph *lines* and grants no power to condemn land for the purpose of erecting a radio microwave relay tower. Therefore, they conclude that the Court had no power to render the condemnation judgment in 1953.

■ This argument is without merit. First, the land could properly be condemned under the authority of Section 65-2101 et seq. T.C.A. Section 65-2105 T.C.A. was originally enacted in 1885 and was modified to its present form in 1932. Microwave radio communication was perhaps unknown then, but the facilities for such are includible in this statute by the language, "or other

system of transmitting intelligence the equivalent thereof, which may be invented or discovered * * *'' Clearly the intent of this statute is to allow the taking of property for a public use, the construction of facilities for speedy communications. Towers like the one in the instant case make it unnecessary to have a row of poles carrying wires from one point to another. They transmit by means of electronically induced waves in the air rather than physical lines, but the result is the same. If a right of way for poles and cables or wires can be condemned under the statute, then so also should small plots for microwave relay towers be condemnable.

The use of the word ''lines'' in this statute might also mean lines of communication in a sense that would include radio-telephone communications. Obviously it means more than just wires, for it includes poles and supports, etc., or in other words, a transmission system. See *Doty v. American Telephone & Telegraph Company,* 123 Tenn. 329, 130 S.W. 1053.

■ The defendant could have properly condemned the land in question under Section 23-1401 T.C.A. which reads:

> ''Power for internal improvements.—Any person or corporation authorized by law to construct any railroad, turnpike, canal, toll bridge, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law, or by the charter under which the person or corporation acts, in the manner and upon the terms herein provided.''

706

Under this section it has been held that telegraph companies may condemn land and that telegraph lines are internal improvements as contemplated therein. *Railroad v. Postal Telegraph Cable Company,* 101 Tenn. 62, 46 S.W. 571. We think a tower, like the one in question, which is devoted to public use by providing rapid means for communication is also such an internal improvement and a proper use for which land may be condemned under this general section.

In addition to showing the validity of the condemnation judgment under the above statutes, it might be noted that this is an equity action and laches or equitable estoppel might be invoked because the complainants have acquiesced in the judgment for nine years, have allowed defendant to build and operate its first tower, and have not tendered any money back.

Alternatively, the complainants argue that if the 1953 judgment is valid it, nevertheless, strictly limited the defendant to the use of a tower 125 feet high and one direction or path for sending radio impulses over complainants land. Therefore, they contend that defendant cannot lawfully use a higher tower or send radio impulses in a new direction. Defendant contends that it acquired an unlimited right to use the land for all of its proper corporate purposes.

In the original condemnation proceeding, the amended petition showed that the land would be taken for the purposes set out in the petition and ''any use as provided by the laws of eminent domain''. The general corporate purpose set out in that petition was the construction, maintenance, and operation of public communication systems for the transmission of intelligence by telephone,

telegraph, and otherwise. It did state that the proposed immediate use of the land in question would be a 125 foot tower sending impulses to Johnson City, but the prayer for condemnation made it clear that the land was sought for broader use than that. The final judgment vested the land in the defendant for use as set out in the amended petition, not inconsistent with the laws of eminent domain.

■ Viewing all of these documents together, we think that the defendant obtained the broadest possible rights for using the land, consistent with the laws of eminent domain. No such limitation of height of tower or direction of transmission, as is suggested by the complainants, was intended.

■ Furthermore, complainants' argument is without force, because, even if the easement granted by the condemnation judgment were more narrow, as they contend, it could be broadened in degree without creating a right to additional compensation or damages, if no further burden is thereby created. 18 American Jurisprudence, Eminent Domain, Section 127; *Ball v. American Telephone & Telegraph Company*, 227 Miss. 218, 86 So.2d 42; *Kerlin v. Southern Bell Telephone & Telegraph Co.*, 191 Ga. 663, 13 S.E.2d 790.

Having found that the 1953 judgment was valid, and that it does not prevent the current use being made of the land, we have only to see if any property rights of the complainants have taken or trespassed upon by the complainants.

The complainants, in this regard, assert that a microwave radio beam passing low over their land prohibits

their reasonable use of the land, and is a taking. They further contend that:

> "In this case, appellees (defendants) are attempting to steal valuable air rights by sending messages by microwave so close to real property of appellants that they are deprived of the use of their property. The landowners are prevented from using their property to the same extent as appellees are using it in the transmission of microwaves."

They say that other property rights are taken in that their land is uniquely suitable for a television relay tower, but now that right is lost because the present tower of defendants would interfere. Finally they argue that defendant, Southern Bell Telephone & Telegraph Company, recognized their rights in 1957 by taking an option on the right to maintain a microwave path across their land in the direction of Morristown, Tennessee, which option was never exercised.

██ In support of these arguments, complainants cite to us recent cases by the United States Supreme Court in which frequent and regular flights of aircraft at low altitudes were held to be a taking of the land because there were a direct and immediate interference with the enjoyment and use of the land. We think the present case, however, is clearly distinguishable from those cited. It is common knowledge that the air above the lands of the United States is constantly traversed by countless numbers of radio signals and impulses. We are confident that the sending of such signals has never been held an actionable trespass or invasion of the rights of a landowner. No harm is done nor interference

with the use of the land created, no matter how low the signals may pass or how frequently.

Complainants seem to be confused as to the effect of the 1953 condemnation judgment. By that judgment only a small plot of ground was taken. They remain the owners in fee of the remainder of the tract with all the rights and privileges that accompany such ownership. Nothing prevents them from building an observation platform on a mountain or selling land for a television relay tower.

We find it unnecessary to consider the existence or non-existence of interference between the present radio tower and any television tower that may be placed on the land. If there is none then both can be located there, and if there is interference, then the privilege of transmitting in that area may be determined by the appropriate agency or forum having jurisdiction thereof.

An examination of the 1957 option to purchase a right of way for a microwave frequency path shows that, had it been exercised, the path would have been so close to the ground as to require clearance of trees and even the removal of a ridge of rock at one point along the 400 foot right of way to prevent interference with the radio waves. Obviously the compensation was for the right to clear the land and keep it clear and not for the passing of radio impulses through the air. No such interference with the land or its use is shown in the instant case.

Thus we conclude that no invasion or trespass has been made on complainants property rights by the passage of radio impulses from the new tower erected by the defendants. Outside of the plot on which the tower

stands and for which they were fully paid, complainants are free to use and enjoy the remainder of their land in any lawful manner they choose. It follows that they are entitled to neither an injunction nor damages and the Chancellor correctly dismissed the bill. All assignments of error are overruled.