# IN THE SUPREME COURT OF IOWA

No. 13–0925

Filed December 19, 2014

**COURTNEY M. KAY-DECKER,** Director, Iowa Department of Revenue,

Appellant,

vs.

**IOWA STATE BOARD OF TAX REVIEW** and **CABLE ONE, INC.,**

Appellees.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The director of the department of revenue appeals a district court ruling affirming a decision of the board of tax review that a company providing voice over internet protocol telephone service was not subject to central assessment for property tax purposes. **JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Thomas J. Miller, Attorney General, Donald D. Stanley Jr., Special Assistant Attorney General, and James D. Miller, Assistant Attorney General, for appellant.

Bryan S. Witherwax of Witherwax Law, P.C., West Des Moines, for appellee Iowa State Board of Tax Review.

Chérie R. Kiser of Cahill Gordon & Reindel, LLP, Washington, D.C., and Christopher E. James of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee Cable One, Inc.

**MANSFIELD, Justice.**

This administrative review proceeding requires us to decide whether a company providing Voice over Internet Protocol (VoIP) service on cable wires in Iowa is subject to central assessment as a "telephone company operating a line in this state" or, otherwise stated, a company "that . . . operates . . . any . . . telephone line." Iowa Code §§ 433.1, .12 (2007). In making this determination, we consider both the language of the statute and how it has been historically interpreted. Based on that review, we conclude that wiring installed originally for cable television purposes but now also used to provide VoIP service is, indeed, a "telephone line." Therefore, the company operating these lines is subject to central assessment for property tax purposes as a telephone company. We also reject the company's alternative arguments that the primary use test prevents it from being assessed as an operator of telephone lines and that federal law preempts state taxation of VoIP providers as telephone companies. For these reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Cable One, Inc. is an Arizona-based company operating in nineteen states, including Iowa. In the Sioux City area, it offers cable television, internet access, and VoIP, the subject of the present dispute.

VoIP is a service that enables two-way voice communications over a broadband Internet connection. Cable One's VoIP service is "fixed," meaning, as with a traditional landline, the customer must make the call from a telephone permanently located in his or her residence. This is in contrast to "nomadic" VoIP, in which the customer is free to make the call from any location, much like a cellular telephone.

With both Cable One's VoIP and traditional landline telephone service, the customer dials a seven- or ten-digit phone number from his or her home telephone and is connected to a person on the receiving end. Both VoIP and traditional phone service offer features such as voicemail, caller ID, call waiting, call transfer, call blocking, and conference calling. Cable One's VoIP service is "interconnected," meaning its customers can send and receive calls to customers of other telephone companies, not just to and from other Cable One subscribers.

The difference between Cable One's VoIP and traditional phone service lies in the manner by which the voice signal is *initially* transmitted. With traditional telephone service, the voice call travels from the customer's phone to the telephone company's central office via a closed circuit of copper wire lines. More recently, fiber optic cables have been replacing these traditional copper cables. At the central office, the company has a switch to connect the caller to the public switched telephone network (PSTN) (unless the call is merely going to another customer served by the same central office).

Traditional telephone service is provided by a variety of carriers. Traditional telephone companies frequently "hand off" calls to other providers so they can reach their final destination. Traditional telephone service also can involve transmissions over wireless microwave systems, in addition to copper wire and fiber optic cable.

With VoIP, Cable One utilizes its combination of fiber and coaxial cable, the same system over which its cable television and internet services are deployed, to provide the first leg of its telephone service.[1]

---

[1]Coaxial cable is "a transmission line that consists of a tube of electrically conducting material surrounding a central conductor held in place by insulators and

Thus, a caller places a call from his or her residence using his or her preexisting corded or cordless telephone. An embedded multimedia terminal adaptor (EMTA) unit then translates the voice communication into the data format necessary to transmit the signal over Cable One's network. The call proceeds in data packets along the coaxial cable that runs into and out of the customer's home. It continues on coaxial cable until it gets to a "node," whereupon it travels on fiber optic cable until it reaches a "headend," a station owned by Cable One. From the headend, Cable One can transmit the call directly to another Cable One customer in the Sioux City area over its hybrid fiber–coaxial network.

However, if the caller is attempting to reach someone who is not a Cable One telephone customer in the Sioux City area, the data packets are transferred to a third-party company, Level 3, that translates them into a different format so they can be sent over the PSTN. Thereafter, the voice signals proceed over the PSTN in the same manner as other telephone calls.

A Cable One customer can also receive a call originating from outside Cable One's Sioux City network. In that case, the system works in reverse with the outside caller placing the call with his or her service-provider that transmits the call over the PSTN, ending with Level 3 transmitting the signal to Cable One for conversion and delivery to its customer via the hybrid fiber-coaxial cable network.

VoIP is complementary to preexisting telephone service because it permits companies like Cable One to expand access to the PSTN without having to install dedicated copper wire or fiber optic connections. Fixed

---

that is used to transmit telegraph, telephone, and television signals." *Merriam-Webster's Collegiate Dictionary* 237 (11th ed. 2003).

VoIP of the type Cable One offers is generally of high quality due to the fact its calls are transmitted over physical lines just like traditional landline calls. In contrast, wireless providers that transmit signals via satellite frequently experience lower call quality than servicers using wired connections.

In mid-2006, Cable One began offering VoIP service to its residential customers in the Sioux City area, including parts of Plymouth and Woodbury Counties. It provided a brochure to its subscribers entitled "Your New Cable ONE Phone Service." This stated that Cable One's VoIP service would operate in a similar manner to landline services, with the same processes for dialing numbers, operating caller ID, enabling three-way calling, and receiving voicemails. A new subscriber of Cable One's VoIP service would be able to transfer her or his existing home telephone number to the new Cable One service and could purchase Cable One's VoIP without also buying broadband internet or cable television services.

The Iowa Department of Revenue became aware of Cable One's VoIP operations and, on November 12, 2008, issued a notice of assessment based on its authority to tax telephone property under Iowa Code chapter 433. *See* Iowa Code §§ 433.1, .4. The Department determined that Cable One should be assessed based on the January 1, 2008 value of its telephone operating property in the state, which it determined to be $671,000. Cable One appealed the notice of assessment to the Iowa State Board of Tax Review, claiming it was not a telephone company subject to taxation under chapter 433 because VoIP is not the equivalent of telephone service.

In October of 2009, the Department sent Cable One another notice of assessment under chapter 433 for the ensuing tax year. This time it

valued Cable One's telephone operating property at $830,000 as of January 1, 2009. Cable One again appealed the assessment and the appeals were combined and transferred to an administrative law judge in the Iowa Department of Inspections and Appeals for a contested case hearing.

Iowa Code chapter 433 is entitled "Telegraph and Telephone Companies Tax." It reads, in relevant part, as follows:

### 433.1 Statement required.

Every telegraph and telephone company operating a line in this state shall, on or before the first day of May in each year, furnish to the director of revenue a statement verified by its president or secretary showing:

1. The total number of miles owned, operated, or leased within the state, with a separate showing of the number leased.

2. The average number of poles per mile, and the whole number of poles on its lines in this state.

3. The total number of miles in each separate line or division thereof, also the average number of separate wires thereon.

. . . .

6. The gross receipts and operating expenses of said company for the year ending December 31 next preceding, on business originating and terminating in this state.

. . . .

8. The total capital stock of said company.

. . . .

11. All real estate and other property owned by such company and subject to local taxation within this state.

12. The specific real estate, together with the permanent improvements thereon, owned by such company and situated outside this state and taxed as other real estate in the state where located . . . .

13. All mortgages upon the whole or any part of its property, together with the dates and amounts thereof.

14. The total length of the lines of said company.

15. The total length of the lines of said company outside this state.

. . . .

**433.4 Assessment.**

The director of revenue shall on the second Monday in July of each year, proceed to find the actual value of the property of these companies in this state, taking into consideration the information obtained from the statements required, and any further information the director can obtain, using the same as a means for determining the actual cash value of the property of these companies within this state. The director shall also take into consideration the valuation of all property of these companies, including franchises and the use of the property in connection with lines outside the state, and making these deductions as may be necessary on account of extra value of property outside the state as compared with the value of property in the state, in order that the actual cash value of the property of the company within this state may be ascertained. The assessment shall include all property of every kind and character whatsoever, real, personal, or mixed, used by the companies in the transaction of telegraph and telephone business; and the property so included in the assessment shall not be taxed in any other manner than as provided in this chapter.

. . . .

**433.12  Definitions.**

. . . .

"*Company*" as used in this chapter means any person, copartnership, association, corporation, or syndicate that owns or operates, or is engaged in operating, any telegraph or telephone line, whether formed or organized under the laws of this state or elsewhere. "*Company*" includes a city that owns or operates a municipal utility providing local exchange services pursuant to chapter 476.

*Id.* ch. 433.

Both parties moved for summary judgment, and the ALJ issued a proposed decision on June 24, 2011, to enter judgment in Cable One's favor. The ALJ stated,

> Cable One does not fit the historical context of a "telephone company." Cable One built its network of cable in order to provide cable television services. It is undisputed that Cable One's network of cable lines was not subject to chapter 433 prior to offering telephone services in the second quarter of 2006. Cable One has been subject to property tax and locally assessed since the time it began operation in Iowa. Cable One has not built a second system of cable or wires to offer telephone services — rather, it is offering telephone services on the same cable network it uses to offer television services. Cable One has only connected with the PSTN by contracting with Level Three. Level Three is a telephone company that is subject to chapter 433.

(Footnote omitted.)

The ALJ went on to conclude,

> The [D]epartment spent considerable time and effort in its brief trying to convince me that Cable One's phone service is not fundamentally different than phone services provided by traditional telephone companies. I do not disagree with that point, but believe that the point misses the mark. I agree that, no matter what technology is used, Cable One offers a service by which its customers talk [to] others by telephone. Traditional telephone companies have used different and enhanced technologies to provide services over the years, but the nature of [a] telephone call has not really changed. Cable One is similarly offering a telephone service, even though its technology is different. Notwithstanding this finding, the focus of the statute is whether Cable One is a "telephone company," as that term is used in chapter 433. For reasons stated above, I find it is not.

The Department appealed the proposed decision to the Iowa State Board of Tax Review. On its review, the Board agreed with the ALJ that Cable One was not subject to assessment under chapter 433:

> In considering both the Department and Cable One's arguments, the Board analyzed the applicable case law provided by both parties. The Board determined that unlike the telegraph and telephone cases that had been previously litigated, there is such a substantial difference between

traditional telephone and VoIP that Iowa precedent allowing for the inclusion of emerging technologies into existing law could not be properly applied in this instance. The Board concluded that the service provided by Cable One is sufficiently distinct from the phone services described in § 433 that it cannot properly be taxed under the existing law as written. The Board agrees with Cable One that the language of § 433 is too narrowly written to impose a tax on their VoIP service.

The Board also stated the primary use test would apply to determine the manner of assessment *even if* Cable One were subject to taxation as a telephone company. The Board further declined to find that federal law preempted taxation of VoIP service.

The Department petitioned for judicial review of the Board's order. After a hearing, the Polk County District Court issued a ruling on May 9, 2013, affirming the Board's decision. The court stated,

> In this case, the intent of the legislature as to what constitutes a telephone company is clear: it requires that whatever entity is in question own or operate, or be engaged in the operation of, a telephone line. It is undisputed on this record that Cable One undertakes none of these required activities. The provision of the services in question is not through a network of lines, but rather through a cable broadband network which is completely independent of the PSTN. This distinction is best highlighted by the fact that Cable One must contract with a third-party in order to connect to the PSTN. Based on a plain reading of §433.12[] and the undisputed record before this court, Cable One does not come within the statutory classification of a "telephone company" for purposes of the assessments in question.
>
> . . . .
>
> The Department has repeatedly urged that Cable One is subject to taxation as a telephone company because it provides a "telephone service." As the Board concluded, that fact is essentially undisputed, but irrelevant. The legislature has chosen to classify what a telephone company is not by reference to the services it provides, but the infrastructure through which those services are provided. Had the legislature chosen to use such a service-focused methodology in the classification of telephone companies, the Department's argument would most likely have merit. Based on the unambiguous wording of chapter 433,

however, the Department's argument is lacking; any relief consistent with its position on assessment as applied to the present case should be directed to the legislative rather than the judicial branch.

(Citation omitted.)

Having found that chapter 433 did not apply to Cable One, the district court declined to rule on the whether the primary use test would control the manner of assessment and whether the taxation of VoIP was federally preempted.[2] The Department timely appealed to this court. We retained the case.

## II. Standard of Review.

Judicial review of agency decisions is governed by Iowa Code section 17A.19. *Naumann v. Iowa Prop. Assessment Appeal Bd.*, 791 N.W.2d 258, 260 (Iowa 2010). "We will apply the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). We defer to the agency's interpretation of law when the legislature has clearly vested that interpretation in the agency's discretion. Iowa Code § 17A.19(11)(*c*). Otherwise, we do not defer to its view and will instead review for correction of errors at law. *See id.* § 17A.19(11)(*b*); *Iowa Network Servs., Inc. v. Iowa Dep't of Revenue*, 784 N.W.2d 772, 775 (Iowa 2010).

We are not aware of any provision of Iowa law granting the Iowa Department of Revenue authority to interpret chapter 433. *Cf.* Iowa Code § 422.68(1) (conferring authority on the director of the Department to prescribe rules for the administration of chapter 422); *Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 420, 423–24

---

[2]The district court also did not rule on Cable One's argument that centrally assessing its VoIP service would violate the Equal Protection Clauses of the United States and Iowa Constitutions. Cable One does not advance this argument on appeal.

(Iowa 2010) (finding that the Department was not clearly vested with authority to interpret the term "manufacturer" as used in Iowa Code section 428.20). The Department does not contend it has been vested with interpretive authority.[3] Accordingly, we will not defer to the agency's interpretation of the relevant statutory terms and will substitute our own judgment for that of the Department if we conclude it erred. *See Sherwin–Williams Co.*, 789 N.W.2d at 424.

**III. Analysis.**

**A. Applicability of Chapter 433 to Cable One's VoIP Service.** We now address Cable One's claim that it should not be centrally assessed under chapter 433 for operation of its VoIP service in the state. When engaging in statutory interpretation, we first examine the language of the statute and determine whether it is ambiguous. *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011). "If the statute is unambiguous, we look no further than the statute's express language. If, however, the statute is ambiguous, we inquire further to determine the legislature's intent in promulgating the statute." *Id.* (citations omitted). "When the legislature has not defined words of a statute, we look to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Gardin v. Long Beach Mortg. Co.*, 661 N.W.2d 193, 197 (Iowa 2003). "[W]e must read a statute as a whole and give it 'its plain and obvious meaning, a sensible and logical construction.'" *Id.* (quoting *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980)).

---

[3]The Department argues at considerable length that the district court applied the improper burden of proof when it did not presume the correctness of the Department's initial assessment. *See* Iowa Code § 429.2(2)(*a*) ("The [D]epartment's assessment shall be presumed correct and the burden of proof shall be on the taxpayer . . . ."). This argument strikes us as off the mark. Since the underlying issue is one of statutory interpretation, which this court renders de novo, the burden of proof is of little moment in this case.

"Generally, we presume words used in a statute have their ordinary and commonly understood meaning." *McGill v. Fish*, 790 N.W.2d 113, 119 (Iowa 2010).

Finally, a statute can encompass technologies not in existence at the time of its promulgation. *See Bruce Transfer Co. v. Johnston*, 227 Iowa 50, 52–53, 287 N.W. 278, 280 (1939) ("[L]egislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage." (Internal quotation marks omitted.)); *accord Kruck v. Needles*, 259 Iowa 470, 477, 144 N.W.2d 296, 301 (1966). For example, in *Bruce Transfer Co.*, we were charged with interpreting an 1872 statute that authorized lawsuits against, among others, " 'any railway corporation, the owner of stages, or other line of coaches or cars.' " 227 Iowa at 52, 287 N.W. at 279. Noting that automobiles did not exist at the time the statute was written, we nevertheless interpreted the statute to apply to the trucking operation in that case. *Id.* at 53, 287 N.W. at 280 ("Thus, an automobile may come within the provisions of an act relating to vehicles generally, although the statute was passed before the invention of automobiles."). Similarly, in *Kruck*, we interpreted a statute banning tire protuberances to apply to safety spike winter tires, even though "tires of this particular type were not produced in 1937 when this statute was enacted and the legislature . . . may not have had in mind prohibition of their use." 259 Iowa at 477, 144 N.W.2d at 301.

We begin with the actual wording of chapter 433. *See, e.g., State v. Iowa Dist. Ct.*, 812 N.W.2d 1, 4 (Iowa 2012) (observing that legislative intent usually "is determined from the language of the statute"). Section 433.1 applies to "[e]very . . . telephone company operating a line in this

state." Iowa Code § 433.1. Section 433.12, while largely reiterating the wording of section 433.1, is similarly expansive in tone. *See id.* § 433.12. It makes clear that " '*[c]ompany*' . . . means any person, copartnership, association, corporation, or syndicate that owns or operates, or is engaged in operating, any telegraph or telephone line, whether formed or organized under the laws of this state or elsewhere." *Id.*

Cable One concedes that it provides telephone service, but disputes that it owns or operates a telephone line.[4] Yet chapter 433 does not require that the company operate a specific type of telephone line or use any particular technology. Nor does it require that the telephone line have been built originally for that purpose. Giving these words their ordinary and commonly understood meaning, it would appear that a cable or wire used for telephone service is, indeed, a telephone line. *See McGill*, 790 N.W.2d at 119.

This is supported by a dictionary definition of "line." *Merriam-Webster*'s preferred definition of line in this context is "a wire or pair of wires connecting one telegraph or telephone station with another or a whole system of such wires." *Merriam-Webster's Collegiate Dictionary* 723 (11th ed. 2003); *see also Schaefer v. Putnam*, 841 N.W.2d 68, 78 (Iowa 2013) (noting that we may refer to dictionary definitions when the legislature leaves a term undefined).[5] Cable One's connections to its telephone service subscribers meet this definition. There is no

---

[4]At oral argument, Cable One's counsel characterized its connection to its residential customers as a "pipe."

[5]This definition is similar to one that would have been current around the time the legislature enacted the original version of chapter 433. An 1898 edition of *Webster*'s *Dictionary* included the following definition of "line": "The wire connecting one telegraphic station with another, or the whole of a system of telegraph wires under one management and name." *Webster's International Dictionary of the English Language* 855 (unabr. ed. 1898).

requirement in chapter 433 that the wire be made of a given material or assembled in a given way—e.g., traditional telephonic copper wire as opposed to coaxial or fiber optic cable. Indeed, traditional telephone companies are using fiber optic cable as well.

The Board decision, as we read it, never confronts these points. The Board asserts that "the language of § 433 is too narrowly written to impose a tax on . . . VoIP service," but it never explains *why.*

In contrast, the district court's judicial review decision does articulate a reason why, in the court's view, Cable One does not own or operate telephone lines. According to the district court, Cable One provides its service "through a cable broadband network which is completely independent of the PSTN. This distinction is best highlighted by the fact that Cable One must contract with a third-party in order to connect to the PSTN."

But this observation does not seem to us dispositive. Iowa Code sections 433.1 and 433.12 by their terms cover *any* telephone lines, not merely the PSTN. Would a company that provided a closed-circuit telephone service connecting its customers to each other without using the PSTN be exempt from central assessment? We think not. As a practical matter, all companies providing common carrier wireline telephone service must interconnect with other telephone companies to provide that service. The statute does not suggest we should treat a traditional cable company that also provides phone service on its broadband network any differently from a traditional phone company that also provides internet service on its broadband network. Both entities are supplying telephone services, plus other services, via lines. Both are therefore telephone companies operating lines within the meaning of chapter 433.

While we are inclined to the view that Iowa Code sections 433.1 and 433.12 are unambiguous on their face, some older caselaw also supports the notion that Cable One is a telephone company operating a line. Chapter 433's predecessor was promulgated in 1878, around the time Alexander Graham Bell was developing the telephone. *See* 1878 Iowa Acts ch. 59 (reported in Miller's Revised and Annotated Code of Iowa, tit. X, ch. 6 (1880)). The law initially pertained only to "every telegraph company operating a line in this state." *Id.* Nevertheless, just a few years later, as the telephone was coming into use, we interpreted the statute to include telephone lines even though it expressly covered only telegraph lines at that time. *See Iowa Union Tel. Co. v. Bd. of Equalization*, 67 Iowa 250, 251, 25 N.W. 155, 155–56 (1885). We reasoned, "Both the telephone and telegraph are used for distant communication by means of wires stretched over different jurisdictions. The fundamental principle in each by which communication is secured is the same." *Id.*, 25 N.W. at 155.[6]

We similarly found a statute authorizing lawsuits against telegraph companies to apply to telephone companies. *Franklin v. Nw. Tel. Co.*, 69 Iowa 97, 98–99, 28 N.W. 461, 462 (1886). We deemed telephone companies to be included in the statute, "based upon the substantial

---

[6]Following our decision in *Iowa Union Telephone*, the statute was amended to expressly include telephone companies as well. *See* Iowa Code § 1328 (1897); *see also* Report of the Code Commission, 26th G.A., at 49 (Iowa 1895), *available at* https://www.legis.iowa.gov/docs/shelves/code/ocr/1896%20code%20commission%20 report.pdf. In 1900, the legislature added what is now section 433.12 defining "company." *See* 1900 Iowa Acts ch. 42, § 7 (then codified at Iowa Code § 1330-f (Supp. 1902)). Since then, the legislature has not made any substantive changes to the portions of chapter 433 at issue in this case. *Compare* Iowa Code § 1330-f (Supp. 1902), *with* Iowa Code § 433.12 (2007).

identity of telegraphic and telephonic modes of communication." *Id.* at 99, 28 N.W. at 462.

These cases underscore the importance of functionality. In them, we focused on the fact that both the telegraph and the telephone achieved distant communication through wires, not on the methods of signal transmission.

As with automobiles in *Bruce Transfer Co.*, 227 Iowa at 53, 287 N.W. at 280, and spiked snow tires in *Kruck*, 259 Iowa at 477, 144 N.W.2d at 301, the technology at issue here did not exist when the legislature enacted the statute. However, in both cases, we applied the language of the statute in a common-sense manner rather than assuming the legislature intended to capture only technologies that existed when the law was enacted.[7]

---

[7]Additionally, the Iowa attorney general has issued an opinion consistent with a broad, purpose-based construction of chapter 433. *See* Op. Iowa Att'y Gen. No. 71-3-5 (Mar. 25, 1971), 1971 WL 240716, at *4. The attorney general concluded "the transmission distance between microwave relay stations [should] be regarded as a telegraph or telephone 'line' for the purposes of Chapter 433," despite the fact no physical wires connected one microwave station to another. *Id.* In reaching this conclusion, the attorney general relied on a functional rather than a literal interpretation of the statute:

> Towers like the one in the instant case make it unnecessary to have a row of poles carrying wires from one point to another. They transmit by means of electronically induced waves in the air rather than physical lines, *but the result is the same. . . .* Obviously [the term 'lines'] means more than just wires, for it includes poles and supports, etc., or in other words, *a transmission system.*

*Id.* (quoting *Brannan v. Am. Tel. & Tel. Co.*, 362 S.W.2d 236, 239 (Tenn. 1962)). The attorney general concluded, " 'Line' is not the physical wire, but the transmission system or line of communication used by the company. As such, any substitutes for the wire-and-pole combination first used [are] to be included under the term 'lines.' " *Id.* at *3.

Cable One and the district court reason that chapter 433 can only apply to telephone services operated over *traditional* telephone lines.[8] We do not find such a limitation in the statute. Chapter 433 applies to "[e]very . . . telephone company operating a line in this state" and defines "company" as "any . . . corporation . . . that owns or operates, or is engaged in operating, any . . . telephone line." Iowa Code §§ 433.1, .12 (2007). The foregoing cases support the view that the definition of "telephone line" adapts with changing technology, so long as there is a line and a comparable service is being provided. Cable One operates a transmission system to carry voice signals from one fixed location to another over a series of wires; therefore, it operates a telephone line within the meaning of chapter 433.

The conclusion that Cable One operates a telephone line is further bolstered by Cable One's own marketing material. Cable One's brochure, entitled "Your New Cable ONE Phone Service," nowhere mentions the term "VoIP" but instead portrays Cable One's service as a standard telephone operation. The publication discusses features like caller ID, three-way calling, and voicemail. It states that "[p]hone service with Cable ONE should be similar to other landline services." It advises customers that they will still operate their phone by dialing a seven- or ten-digit number from a traditional, landline phone console. Thus, for the subscriber of Cable One's VoIP service, there is little discernible difference between VoIP and traditional telephone service.

Cable One notes that it contracts with a third party, Level 3, to provide transmission over the PSTN. Yet traditional landline telephone

---

[8]But what is traditional? The record indicates that traditional telephone companies now employ numerous technologies that did not exist in the nineteenth century such as fiber optic cable, digitization, and microwave relay stations.

companies frequently contract with one another to send and receive signals to and from customers of other service-providers. These interconnection agreements, like Cable One's contract with Level 3, govern the financial and technical aspects of the relationships between companies, but do not affect their status as taxable telephone companies.

In a recent thorough and persuasive decision, the Arizona Court of Appeals held that Cable One should be centrally assessed for its VoIP service in that state, despite paying Level 3 to transmit signals over the PSTN. *Cable One, Inc. v. Ariz. Dep't of Revenue*, 304 P.3d 1098, 1099–1100 (Ariz. Ct. App. 2013). The Arizona statute in question permits central assessment of telecommunications companies. *Id.* (citing Ariz. Rev. Stat. § 42-14401 (2006)). It defines "telecommunications company" to include "any person that owns communications transmission facilities and that provides public telephone . . . access for compensation to effect two-way communication." *Id.* (quoting Ariz. Rev. Stat. § 42-14401). Cable One argued there, as it does here, that it did not meet the statutory requirements because it contracted with Level 3 whenever a communication needed to be transmitted over the PSTN. *See id.* at 1100–01. The court rejected this argument, noting the statute

> does not distinguish between a person who provides long-distance service directly to the end user and a person who provides long-distance service to the end user through its own technology and technology it obtains from a third party.

*Id.* at 1106. It analogized the situation to a wholesaler–retailer relationship and concluded,

> Cable One provides its customers with access to the PSTN. To assert otherwise . . . "misstates the reality of the situation."

> . . . [T]hrough its VoIP service, it provides "telecommunications exchange or inter-exchange access," which, using more familiar terms, is what it is advertising to the public: "[p]hone service" with "UNLIMITED local & long-distance calling in the continental U.S." Cable One is, therefore, a "telecommunications company" under A.R.S. § 14-14401 and subject to central assessment by the Department.

*Id.* at 1107 (alteration in original) (quoting *Mayor of Balt. v. Vonage Am. Inc.*, 544 F. Supp. 2d 458, 472 (D. Md. 2008)).

Like the Arizona court, we find that the fact Cable One uses a third-party for access to the PSTN does not affect its status as a telephone company for property tax purposes. Just as Cable One owns "communications transmissions facilities" and provides "public telephone . . . access" in Arizona, thereby subjecting itself to central assessment there, so too Cable One "operates [a] telephone line" in Iowa, thereby subjecting itself to central assessment here. Neither statute requires the company to own or operate the *entire* line.

Other courts have also determined that VoIP providers should be treated as telephone or telecommunications companies under their respective state taxation schemes. *See, e.g.*, *Vonage Am., Inc. v. City of Seattle*, 216 P.3d 1029, 1033, 1036 (Wash. Ct. App. 2009) (holding Vonage was subject to telephone utility tax for its VoIP service and was not exempt as an internet provider). The Montana Supreme Court held that a cable company providing VoIP service should be centrally assessed under a statute allowing taxation of "telecommunications services companies." *Bresnan Commc'ns, LLC v. State*, 315 P.3d 921, 924 (Mont. 2013) (quoting Mont. Code Ann. § 15-6-156(1)(d) (2001)). The lower court had concluded that the company did not qualify as a telecommunications company because it relied on its preexisting cable television network to provide, among other things, VoIP service. *See id.*

at 926. The Montana Supreme Court criticized the lower court's emphasis on the "physical attribute of Bresnan's property." *Id.* at 927. Instead, the court examined the "use and productivity of Bresnan's entire network" to conclude it provided a telecommunications service. *Id.* at 928.

Perhaps the most direct analogue to the present case comes to us from the United States District Court for the District of Maryland. *Mayor of Balt.*, 544 F. Supp. 2d at 472. The federal court there held that Vonage's VoIP service was subject to the city's telecommunication tax. *Id.* The Baltimore City Code provision permitted a tax on "each person who leases, licenses, or sells a telecommunications line to any customer." *Id.* at 461 (quoting Baltimore, Md. City Code art. 28, § 25–2). Vonage contended that it did not sell telecommunication lines to its customers because its VoIP service relied on contracts with third-party carriers to transmit calls over the PSTN. *Id.* at 469. The court rejected this argument and focused instead on the nature of the service Vonage provided to its customers. *See id.* at 472. "Although these third-party carriers provide the wired connection *to Vonage*, it is Vonage, *not* these carriers, which provides this connection to Vonage's customers." *Id.* "Selling a telecommunication line" in the Baltimore provision and "operating . . . [a] telephone line" in chapter 433 are comparable in that they both focus on the service being provided rather than the technology being used.[9] *Compare* Baltimore, Md. City Code art. 28, § 25–2, *with* Iowa Code § 433.12.

---

[9]Additionally, Comcast Corporation has apparently conceded that its VoIP service is subject to taxation in Oregon. *See Comcast Corp. v. Dep't of Revenue*, 20 Or. Tax 319, 333–34 (T.C. 2011) ("One corporate member of the Comcast family of companies already reports as a centrally assessed taxpayer in respect of its 'voice over internet' or VOIP services."), *rev'd on other grounds*, 337 P.3d 768 (Or. 2014) (en banc).

Finally, it should be noted to the extent Cable One's property is centrally assessed, it cannot be taxed twice. "[T]he property so included in the assessment shall not be taxed in any other manner than as provided in this chapter." Iowa Code § 433.4.

For the foregoing reasons, we conclude Cable One is a "telephone company operating a line in this state" and "operates . . . [a] telephone line." Iowa Code §§ 433.1, .12. Hence, it falls under the purview of chapter 433.

**B. Primary Use.** Cable One argues that even if its VoIP service qualifies as a telephone line, the Department may not centrally assess Cable One because it *primarily* uses its hybrid fiber–coaxial network to provide cable television service, not VoIP.

We believe a primary use test does not apply to chapter 433. First and foremost, chapter 433 does not refer to such a test. Its coverage extends to any company that operates a "telephone line," regardless of whether the line is used for something else as well. *Id.* § 433.12. The Department is supposed to include in the assessment "all property of every kind and character whatsoever . . . used by the companies in the transaction of telegraph and telephone business." *Id.* § 433.4. This language is not qualified by a term such as "primarily." *See id.*

Furthermore, long ago, under chapter 433's predecessor, we declined to apply a primary use test to a railroad's lines that were "used in the ordinary manner for the transaction of railroad business" and only

---

The Oregon Supreme Court, in reversing the tax court decision with respect to cable and internet services, noted that taxation of VoIP service was not at issue on appeal because Comcast had already conceded it qualified as a communication service. *Comcast Corp.*, 337 P.3d at 770 n.1.

secondarily for "commercial telegraph business." *Chi., Burlington & Quincy R.R. v. Rhein,* 135 Iowa 404, 404–05, 112 N.W. 823, 824 (1907).

The Arizona Court of Appeals similarly rejected a primary use test in its recent decision involving Cable One, observing, "Predominant or primary use is not an element of [the statutes] pertaining to central assessment of telecommunications companies . . . ." *Cable One, Inc.,* 304 P.3d at 1107.

**C. Preemption.**    Finally, Cable One argues that federal law prevents the Department from taxing it as a telephone company.  It cites to a number of FCC decisions and federal statutes and cases governing the regulation of VoIP providers and distinguishing them from traditional telephone companies.  *See, e.g., In re Vonage Holdings Corp.,* 19 FCC Rcd. 22404, 22404–05 (Nov. 12, 2004) (preempting Minnesota telephone regulations of Vonage's VoIP service because the interstate and intrastate elements could not be separated due to the mobility of nomadic VoIP callers).  But these authorities pertain only to regulation of VoIP, not its taxation.  *See id.* at 22405 ("We express no opinion here on the applicability to Vonage of Minnesota's general laws . . . , such as laws concerning taxation . . . .").

It is well established that federal regulation of an activity does not generally preempt state taxation of companies operating in that area. The United States Supreme Court has said, "No general principles of law are better settled or more fundamental than that the legislative power of every state extends to all property within its borders . . . ." *Pullman's Palace Car Co. v. Pennsylvania,* 141 U.S. 18, 22, 11 S. Ct. 876, 877, 35 L. Ed. 613, 616 (1891).  In a more recent case, the Supreme Court held that a state was not preempted from taxing airline property despite the fact interstate air travel was federally regulated.  *Braniff Airways, Inc. v.*

*Neb. State Bd. of Equalization & Assessment*, 347 U.S. 590, 597, 74 S. Ct. 757, 762, 98 L. Ed. 967, 975 (1954). The Court said,

> Federal regulation of interstate land and water carriers under the commerce power has not been deemed to deny all state power to tax the property of such carriers. We conclude that existent federal air-carrier regulation does not preclude the Nebraska tax challenged here.

*Id.*; *see also U.S. Transmission Sys., Inc. v. Bd. of Assessment Appeals*, 715 P.2d 1249, 1250, 1254–55 (Colo. 1986) (en banc) (distinguishing between regulation and taxation and permitting the state assessment board to tax a utility's property despite the fact it was regulated by the FCC); *Post-Newsweek Cable, Inc. v. Bd. of Review*, 497 N.W.2d 810, 816, 818 (Iowa 1993) (holding that where federal law preempted local regulation of cable television rates, the state was nevertheless permitted to tax the cable company on its tangible property located in the state).

The Arizona Court of Appeals addressed a similar argument and declined to find federal law preempted taxation of VoIP providers:

> [C]iting a host of federal statutes and FCC orders pertaining to a variety of telecommunications services, including VoIP service, and federal case law interpreting or applying these statutes, Cable One argues classifying it as a telecommunications company . . . is contrary to these authorities. We reject this argument. These authorities concern regulation, not taxation.
>
> . . . Although Congress and the FCC have imposed various regulations on VoIP providers and have preempted a variety of efforts by the states to regulate VoIP providers, neither Congress nor the FCC has taken any action to preempt state taxation of VoIP providers.

*Cable One, Inc.*, 304 P.3d at 1108.

The parties cite no additional authority that would indicate Congress has preempted taxation of VoIP providers in the time since the Arizona court addressed the issue. We therefore agree with its reasoning

and conclude that federal law does not preempt state taxation of VoIP providers.

**IV. Conclusion.**

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

**JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Zager, J., who takes no part.