# IN THE COURT OF APPEALS OF IOWA

No. 21-0017
Filed December 15, 2021

**ANGELA JACKSON, as surviving spouse of MAX JACKSON,**
Plaintiff-Appellant,

**vs.**

**BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, and OLD REPUBLIC INSURANCE COMPANY,**
Defendant-Appellees.

_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Angela Jackson appeals the district court's ruling on judicial review affirming the denial of workers' compensation death benefits. **AFFIRMED.**

Mark T. Hedberg of Hedberg & Boulton, P.C., Des Moines, for appellant.

Timothy W. Wegman and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, West Des Moines, for appellees.

Considered by Mullins, P.J., and Schumacher and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Angela Jackson, as surviving spouse of Max Jackson, appeals the district court's ruling on judicial review affirming the denial of workers' compensation death benefits on her claim Max sustained a mental injury in the course of his employment with Bridgestone Americas Tires Operations, LLC (Bridgestone), resulting in his suicide. She essentially argues the agency and district court erred in finding she failed to meet her burden on the issues of factual and legal causation.[1]

## I.      Background

Max began working for Bridgestone in the late 1980s. His job meant everything to him, and he missed only three days of work in twenty-eight years. In early August 2016, Max engaged in acts of insubordination—essentially disobeying supervisory directives concerning safety and quality—and was caught lying about those acts. Due to said insubordination, Max was suspended for a "cooling-off period," during which the matter was forwarded to human resources and an investigation was conducted. On the afternoon of August 8, Max was called

---

[1] Angela also argues "the affirmative defense under [Iowa Code section] 85.16(1) (2018) was waived by the defendant," "the defendant should not be able to argue the chain of causation theory is not being met in order to prove the affirmative defense," and, therefore, "the only issue really to be decided . . . is whether or not the legal causation standard has been proven." Section 85.16(1) renders injuries caused "[b]y the employee's willful intent to injure the employee's self or to willfully injure another" not compensable. While the hearing report, which was approved by the agency, noted Bridgestone's waiver of affirmative defenses under section 85.16, the issues concerning the presence of an injury and causation were listed as disputed. Injury and causation were the prevailing issues before the agency and district court and also control the disposition of this appeal. So we reject the claim that waiver of the affirmative defense disposes of the factual-causation issue. In any event, even if legal causation was the only issue in play, the outcome would be the same based on our analysis below.

into a meeting and was notified his employment was being terminated. Shortly after said notification, Max's son and fellow employee at Bridgestone, Kenneth, called Max. Max shared the news with Kenneth, who directed Max to not worry about it and work with his union representatives. Max also called Angela while she was on her way home shortly after 2:30 p.m. and advised her of the termination. Angela arrived home before Max, and when Max arrived, he went to the garage and did not enter the home. Angela went out to the garage because she heard something running, which turned out to be a vehicle, but Max had locked himself in the garage with a chain and padlock from the inside. Max agreed to come out, but when Angela stepped into the home for a moment, Max left. Angela called law enforcement.

Max was found dead at a nearby bridge shortly thereafter, mere hours after he learned of his termination, and law enforcement ruled his death a suicide by hanging. Max made statements around the time of his termination that he would take his own life if he lost his job. Angela opined in her testimony that Max's termination was "the only reason" he committed suicide.

Max had a history of substance abuse but had been sober for several years. Roughly eight months prior to the foregoing events, Max underwent a behavioral health consultation and was diagnosed with major depressive disorder and anxiety disorder. In his initial consult, he reported hating people, listing various individuals, including Angela, Kenneth, his neighbor, and a dentist, but not anyone from his place of employment. He was recommended to attend psychotherapy and did, but he declined a referral for psychiatric treatment. He underwent an initial social history assessment later that month, at which he presented issues with anger and

rage. He was additionally diagnosed with intermittent explosive disorder. Max was discharged from treatment due to scheduling issues with his provider, but the counselor recommended he continue therapy. There is no evidence in the record that Max sought any further treatment for his diagnoses.

In January 2018, Angela filed an arbitration petition seeking death benefits with the workers' compensation commissioner. Around the same time, Angela solicited an opinion from Dr. James Gallagher on "the issue of a possible causative linkage between work events and [Max] taking his own life in a rather abrupt fashion." Dr. Gallagher concluded:

> It may be that [Max] was suffering psychologically and that work provided a considerable amount of structure for him and helped with mood self-regulation and, thus, his devotion to work. It seems his devotion to work was well-known along with the importance of his job. It may be that [Max] was suffering from emotional distress, but the timeline was very short between termination and ending his life. Offering a psychiatric diagnosis for his behavior would be speculative at this point. His suicide was more of an impulsive act designed to relieve extreme fear and psychological pain, which he apparently found unmanageable by any other means. From [Max]'s vantage point, the stressor of termination was obviously overwhelming and led to his death by hanging. . . .
> One could say that other employees would have managed termination differently, but such would still be quite a stressor for a longterm employee, especially one who had demonstrated such loyalty. Regardless, in [Max]'s case it was a catastrophic stressor that could have been avoided. . . .
> Thus, there appears to be a causative linkage between the behavior of his employer and [Max]'s swift decision to end his own life, probably out of fear and shame of losing his job. Despite [Max]'s counseling history, the abrupt termination without the due process as implied [by the union representative] was a substantial factor leading up to [Max]'s demise. It was clearly [Max]'s perception that his job loss was catastrophic.

The matter proceeded to an arbitration hearing in January 2019. In its ensuing ruling, a deputy commissioner concluded Max's ongoing "mental

conditions appear[ed] to have been rooted in personal issues" outside of his employment, work was his place of solace, Max's fear of termination and psychological pain resulting therefrom were not injuries arising in the course of employment, the punishment fit the insubordinate acts, and, as such, his mental condition and suicide were not causally related to his termination. More succinctly, the deputy commissioner found the suicide could not be traced to an injury arising out of and in the course of employment.

Following the deputy commissioner's denial of benefits, Angela appealed to the commissioner, the commissioner affirmed, and Angela filed a petition for judicial review in the district court. In its ruling, the district court highlighted that Dr. Gallagher's opinion was based on incomplete information and concluded the evidence was insufficient to show any mental injury was related to stress from the job and factual causation was therefore lacking. The court also found legal causation lacking based on the absence of evidence that Max was treated differently than other insubordinate employees and thereby subjected to unusual job stress. The court affirmed the denial of benefits.

Angela appeals.

## II.     Standard of Review

"Judicial review of agency decisions is governed by Iowa Code section 17A.19" (2020).[2] *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017) (quoting *Kay-Decker v. Iowa State Bd. of Tax Rev.*, 857 N.W.2d 216, 222

---

[2] References in this opinion to Iowa Code chapter 17A are to the version of the code in force when the petition for judicial review was filed, 2020. Unless otherwise noted, references to chapter 85 are to the version of the code in force when the claim for benefits was filed with the commissioner, 2018.

(Iowa 2014)); *accord Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015). The district court acts in an appellate capacity in judicial-review proceedings. *Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 838 (Iowa 2013) (quoting *City of Sioux City v. GME, Ltd.*, 584 N.W.2d 322, 324 (Iowa 1998)). On appeal, this court "appl[ies] the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Brakke*, 897 N.W.2d at 530 (quoting *Renda v. Iowa Civ. Rts. Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010)); *accord Des Moines Area Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015). Relief in a judicial-review proceeding is appropriate only "if the agency action prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(a) though (n)." *Brakke*, 897 N.W.2d at 530.

"Our review of a decision of the workers' compensation commissioner varies depending on the type of error allegedly committed by the commissioner." *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). Where the alleged "error is one of fact, we must determine if the commissioner's findings are supported by substantial evidence." *Id.*; *see* Iowa Code § 17A.19(10)(f). This court is not entitled to reweigh the evidence in a substantial-evidence review—we only determine whether substantial evidence supports the agency finding. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). "Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings." *Bearinger v. Iowa Dep't of Transp.*, 844 N.W.2d 104, 106 (quoting *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 65 (Iowa 2002)). "If the agency's findings are supported by substantial evidence, those findings are binding upon us." *Fed. Express Corp. v. Mason City Human Rights Comm'n*, 852 N.W.2d 509, 510–11

(Iowa Ct. App. 2014). "If . . . the claimed error lies in the commissioner's application of the law to the facts, we will disturb the commissioner's if it is '[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact.'" *Harris*, 778 N.W.2d at 196 (quoting Iowa Code § 17A.19(10)(m)).

## III. Analysis

Angela argues "max suffered a mental injury in the course of his employment" and, as such, she should have been awarded death benefits as Max's surviving spouse. "Under workers' compensation law employers shall pay compensation 'for any and all personal injuries sustained by an employee arising out of and in the course of the employment . . . .'" *Humboldt Cmty. Schs. v. Fleming*, 603 N.W.2d 759, 761 (Iowa 1999) (ellipsis in original) (quoting Iowa Code § 85.3(1)). Compensation is available for dependents, such as a surviving spouse, for injuries resulting in death. Iowa Code § 85.31. "The words 'injury' or 'personal injury'" include "death resulting from personal injury." *Id.* § 85.61(4)(a).

"[A] mental injury without an accompanying physical injury" is a personal injury under certain circumstances. *Fleming*, 603 N.W.2d at 761. To qualify as a personal injury, a claimant must "prove both factual causation and legal causation." *Dubinovic v. Des Moines Pub. Schs.*, No. 18-0194, 2019 WL 2152896, at *1 (Iowa Ct. App. May 15, 2019) (citing *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995)). "[F]actual causation means medical causation, that is whether the employee's injury is causally connected to the employee's employment." *Dunlavey*, 526 N.W.2d at 853. Legal causation is satisfied when "an employee establishes that the mental injury 'was caused by workplace stress of greater magnitude than the day-to-day mental stresses experiences by *other workers*

*employed in the same or similar jobs*,' regardless of their employer." *Id.* at 855; *accord Fleming*, 603 N.W.2d at 761. Factual causation presents an issue of fact while legal causation presents an issue of law. *Dunlavey*, 526 N.W.2d at 853.

A.      Factual Causation

Angela agrees "the suicide itself cannot be the injury" but argues "Dr. Gallagher's report when read as a whole unmistakably demonstrates that Max (1) suffered a mental injury as a result of being fired and (2) that the firing and resulting mental injury caused him to take his own life." She submits the following chain of factual causation: "The firing caused a mental injury, the mental injury caused the suicidal act, and the suicidal act resulted in [Max]'s death."

Because Angela fails to cite any legal authority whatsoever on the issue of factual causation, other than a passive reference to "Iowa Code chapter 85," we could deem the argument waived on appeal. *See* Iowa R. App. P. 6.903(2)(g)(3). We choose to address the question of whether the agency decision was supported by substantial evidence. *See Fleming*, 603 N.W.2d at 763. On the issue of factual causation, the *Fleming* court analyzed the connection between the employee's job-related stress and ultimate suicide. *Id.* True, Dr. Gallagher opined, "there appears to be a causative linkage between the behavior of his employer and [Max]'s swift decision to end his own life." But the district court was correct that Dr. Gallagher's opinion was based on incomplete information and did not contemplate Max's repeated and blatant insubrdination, the fact that company policy mandated termination for such an infraction without the possibility of progressive discipline, and the policy had been followed in the past as to other insubordinate employees. As such, the agency was within its authority to give little weight to Dr. Gallagher's

opinion. *See Dunlavey*, 526 N.W.2d at 853 ("The weight to be given such an opinion is for the finder of fact, in this case the commissioner, and that may be affected by the completeness of the premise given the expert and other surrounding circumstances. When an expert's opinion is based upon an incomplete history, the opinion is not necessarily binding upon the commissioner. The commissioner as trier of fact has the duty to determine the credibility of the witnesses and to weigh the evidence, together with the other disclosed facts and circumstances, and then to accept or reject the opinion." (internal citations omitted)). Here, Max's alleged mental injury did not result from on-the-job, work-related stressors. Instead, any mental injury resulted from Max's love for his job, which was terminated as a result of his insubordination. And the evidence shows termination was a reasonable and mandated adverse employment action based on the circumstances. At the end of the day, Angela failed to meet her burden to "show the *job* caused the [alleged] mental injury." *See Fleming*, 603 N.W.2d at 763 (emphasis added). As such, we agree the district court that the agency's decision was supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f).

B.     Legal Causation

Angela argues "legal causation was established as a result of a traumatic mental injury triggered by the termination and the events leading up to the termination." Angela highlights the facts that Max was a long-time and dedicated employee, his employment was not at will, his termination was an "extreme punishment," Max was not an "average employee," and "the stressors felt by Max in this circumstance were unusual when compared to similarly-situated union

workers and the abrupt termination was a sudden and traumatic event in the context of the union protections afforded to him."

As noted, legal causation is satisfied when "an employee establishes that the mental injury 'was caused by workplace stress of greater magnitude than the day-to-day mental stresses experienced by *other workers employed in the same or similar jobs*,' regardless of their employer." *Dunlavey*, 526 N.W.2d at 855 (citation omitted); *accord Fleming*, 603 N.W.2d at 761. Angela presented no evidence about the reaction of other employees in the same or similar jobs who were terminated for insubordination. And, even assuming a mental injury occurred as a result of termination or leading up to it, Angela presented no evidence that the resulting stress was of greater magnitude than the mental stress experienced by other workers in the same or similar jobs that were terminated for insubordination, either as to so-called average workers or long-time and dedicated union workers such as Max. The evidence does not show that Max was subjected to on-the-job "unusual stress" tethering the alleged injury to his employment. *See Dunlavey*, 526 N.W.2d at 856. Absent evidence offering a "comparison of the stress endured by 'similarly situated employees,'" we agree Angela failed to meet her burden on the issue of legal causation.

## IV. Conclusion

We agree with the agency and district court that Angela failed to meet her burden on the issues of factual and legal causation thus resulting in the denial of death benefits. As such, we affirm the district court's decision on judicial review.

**AFFIRMED.**